CITY OF STATESVILLE, a MUNICIPAL CORPORATION, PETITIONER v. LOUIS G. BOWLES AND WIFE, EUGENIA W. BOWLES; HOWARD HOLDERNESS AND *THE JEFFERSON STANDARD LIFE INSUR-ANCE COMPANY*, a CORPORATION, RESPONDENTS

No. 35

(Filed 14 April 1971)

1. **Eminent Domain § 6— sewer line easement — harmless error in admission of testimony**

Where (1) it had previously been adjudicated that the city acted in good faith and did not abuse its discretion in selecting a sewer route across respondents' property, and (2) the location of the sewer line was a *fait accompli* and the parties stipulated that the only issue before the judge, who heard the case without a jury, was what damages, if any, resulted to respondents' land from the sewer line as laid, the trial judge erred in allowing respondents to cross-examine the city engineer with reference to another possible location of the sewer line across their property; however, such error will not be held prejudicial where the record contains no suggestion that the judge penalized the city for failing to put the sewer line at another location.

2. **Appeal and Error § 57— nonjury trial — presumption that judge disregarded incompetent evidence**

In a nonjury trial, in the absence of words or conduct indicating otherwise, the presumption is that the judge disregarded incompetent evidence in making his decision.

APPEAL by petitioner from *Beal, S.J.*, 8 June 1970 Session of IREDELL, transferred from the Court of Appeals for initial appellate review by the Supreme Court under G.S. 7A-31(b)(4).

This special proceeding was instituted on 8 April 1966 by petitioner, City of Statesville, to condemn an easement twenty feet in width for a sanitary sewer line over certain property of respondents Bowles in Iredell County. The land in a ninety-acre tract, bounded on the north by the old Mocksville Road; on the east by Signal Hill Drive; on the south by East Broad Street and Newtowne Plaza Shopping Center; on the west by the shopping center and Interstate Highway No. 77 (I-77). The land is subject to a deed of trust to which the additional respondents are parties. They filed no answer.

Respondents Bowles (respondents) denied petitioner's right to take the land. The Clerk of the Superior Court, however, ruled that petitioner was entitled to condemn the property and appointed commissioners to appraise respondents' damages. On 5 August 1966 they assessed respondents' damages at $12,000.00

and estimated that special benefits in the amount of $2,000.00 would accrue to their land from the construction of the sewer. Both parties excepted to the commissioners' report. On 29 August 1966 the Clerk entered judgment in accordance with the report, and both parties appealed. The City, however, paid the sum of $10,000.00 into the office of the Clerk of the Superior Court and proceeded to construct the sewer.

At the August 1967 Session, *Gambill, J.,* entered judgment that the City had lawfully condemned the easement described in the petition and that only the issue of damages remained. Respondents gave notice of appeal. On 18 March 1969 the appeal was dismissed because of their failure to perfect it. At the 17 March 1969 Session the jury awarded defendants damages in the amount of $19,000.00. Petitioner appealed to the Court of Appeals, which ordered a new trial for errors in the judge's charge. *See City of Statesville v. Bowles,* 6 N.C. App. 124, 169 S.E. 2d 467.

At the retrial in June 1970 the parties waived a jury and stipulated, *inter alia,* (1) on 29 August 1966 the City condemned a permanent easement for a sanitary sewer system over a 90-acre tract of land belonging to respondents; (2) the easement is 20 feet wide and appropriates 1.26 acres of respondents' land, its location and length being shown by the map, petitioner's Exhibit 1; and (3) the only issue for the court's consideration is the amount of damages, if any, sustained by defendants.

Respondents' evidence tended to show: The fifteen-inch, gravity flow sewer line runs approximately 2,800 feet across respondents' land from the northeast corner to the southwest corner. The fair market value of the 90-acre tract immediately after the taking on 29 August 1966 was from $40,000.00 to $46,650.00 less than its value before the taking.

The boundaries and contours of the property are such that it divides naturally into a 21-acre tract and a 69-acre tract. Because the 21-acre tract fronts on the old Mocksville Road, adjoins the Newtowne Shopping Center, and has "a great deal of sight distance on I-77," its highest and best use prior to the taking was for commercial purposes, particularly a shopping center. Salisbury Branch runs from the Mocksville Road southwesterly through this tract toward I-77. The 21 acres slope westwardly toward Salisbury Branch, and the property is lower than I-77. Extensive grading and filling would be required to level the

property before it could be developed for commercial purposes. The sewer line across the 21-acre tract is all underground, and its manholes are from 5.5 to 6 feet deep. City regulations only permit grading to lower the height of a manhole to a minimum of three feet above the sewer line. Thus, "the free use of the land is restricted because of the location and depth of the sewer line." In the opinion of respondents and some of their expert appraisal witnesses, as a practical matter, "the sewer line problem coupled with the grading" foreclosed any commercial use of the 21-acre tract. It is now best suited for a residential subdivision since that use would require the least grading.

The highest and best use of the greater portion of the 69-acre tract now, as it was before the taking, is for a residential subdivision. Its value for that purpose, however, has been greatly reduced. City regulations do not permit buildings over a sewer line; so three or four building sites on the old Mocksville Road have been completely destroyed by the location of the sewer. Furthermore, the line is laid in a U-shape on the northern portion of this tract, and that portion of the line is exposed in two sections—one, a hundred feet in length; the other, two hundred feet. The exposed sections lie in the center of the Bowles property approximately 375 feet south of the old Mocksville Road. The hundred-foot exposure "is visible to approximately 17 acres of the Bowles property. The 200-foot exposure is visible from 5 acres." An exposed sewer line detracts from the value of the property.

Respondents' witnesses conceded that the portion of the 69-acre tract fronting on East Broad Street has not been affected by the sewer line and that its highest and best use is for commercial purposes. They also concede that prior to the taking the 21-acre tract had no access to a sewer line and that the 69-acre tract now has access to the City's sanitary sewer system.

Petitioner's evidence tended to show: Except for 15 to 18 acres fronting on East Broad Street, which is suitable for commercial development, the highest and best use for all of respondents' property is, and has been, for a residential subdivision. Both before and after the taking of the easement the cost of grading the 21 acres would prohibit its use for commercial purposes. However, in the opinion of the City engineer, the level of the 21-acre tract could be raised without disturbing the sewer. To provide access to this tract from I-77 would require a tre-

mendous expenditure for the construction of a road from East Broad Street into the property. Respondents' land lying north of the shopping center and between I-77 and Salisbury Branch is "a bottom," which "doesn't lend itself to much immediate development." O. J. Clontz, a specialist in real estate appraisals who testified for the City, thought its "most probable use" would be for "light manufacturing." In the opinion of all the expert appraisers who testified for the City, respondents' property has been benefited from the sewer line across their property by at least $10,000.00. One witness assessed the benefit at $11,500.00.

Upon motion of counsel for petitioner, at the close of the evidence, the judge viewed respondents' property and the easement in suit. Thereafter, in substantial compliance with G.S. 1A-1, Rule 52(a), he found facts consistent with the evidence detailed above, assessed respondents' damages at $13,240.00, and entered judgment accordingly. From this judgment petitioner appealed.

*Sowers, Avery & Crosswhite for petitioner appellant.*

*McElwee, Hall & Herring for respondent appellees.*

SHARP, Justice.

Judge Beal's findings of fact support his judgment, and the evidence supports his findings of fact. Thus, unless it appears that the findings were influenced by incompetent evidence, the judgment must be affirmed. *Reid v. Johnston,* 241 N.C. 201, 85 S.E. 2d 114; *Gasperson v. Rice,* 240 N.C. 660, 83 S.E. 2d 665.

Petitioner, contending that the court acted upon incompetent evidence, assigns as error the admission of certain testimony with reference to another possible location of the sewer line over respondents' property. Respondents elicited this evidence in their cross-examination of E. B. Stafford, the engineer who designed the City sewer system. On direct examination, without objection, Stafford testified that in locating a sewer line professional ethics required an engineer to consider the interest of all property owners affected by its location; that after consultation with Mr. Bowles and the others, he had put the sewer "on what (he) felt would be the most equitable location for all parties concerned."

On cross-examination, counsel for respondents sought to extract from Mr. Stafford an admission that he ran the sewer

line through the middle of the 21-acre tract rather than "through the lower part of Mr. Bowles' property" in order to spare the City the expense of a lift station, which the latter location would have required. Counsel showed Stafford a map (not made a part of the case on appeal) and, over objection, questioned about a dotted line thereon. Stafford said it showed "an approximate possible lower elevation location." However he also testified in substance as follows: He had never discussed with Mr. Bowles any possible lower elevation location of the sewer. Mr. Bowles' concern was that the entire sewer line be put underground. Stafford chose the location in suit because (1) it was good engineering practice to construct a sewer line so that the pull of gravity would deliver the sewage to the treatment plant; (2) the chosen route "was the logical location for all the property that the line was to serve"; and (3) it was the "economical long range plan" considering any future expansion by the City.

[1] Petitioner contends that the court having heard evidence of another possible route "such evidence was taken into consideration by it in arriving at its verdict." Actually the court heard no testimony that the City had ever considered an alternative route. It was error, however, for the court to have permitted the cross-examination with reference to another possible route. In the first place "the choice of a route in a condemnation proceeding is primarily within the political discretion of the grantee of the power and will not be reviewed on the ground that another route may have been more appropriately chosen unless it appears that there has been an abuse of the discretion." *Charlotte v. Heath,* 226 N.C. 750, 754, 40 S.E. 2d 600, 603. That there was no abuse of discretion, and that the City had acted in good faith in selecting the sewer route, had been adjudicated approximately three years earlier. In the second place, the location of the easement was a *fait accompli,* and the parties had stipulated that the only issue before Judge Beal was what damages, if any, had resulted to respondents' land from the sewer line *as laid.*

[2] Petitioner's representation of the virtues of the chosen route and respondents' insinuations that another and better route was rejected at respondents' expense were diversionary tactics which have obviously served no useful purpose for either party. However, petitioner's assumption that prejudice necessarily resulted from the challenged evidence is not borne out by the record. It contains no suggestion that Judge Beal penalized the City for failing to put the sewer at some "possible lower

---

---

elevation location." The presumption is to the contrary. In a nonjury trial, in the absence of words or conduct indicating otherwise, the presumption is that the judge disregarded incompetent evidence in making his decision. *Anderson v. Insurance Co.,* 266 N.C. 309, 145 S.E. 2d 845; *Chappell v. Winslow,* 258 N.C. 617, 129 S.E. 2d 101; *Reverie Lingerie, Inc. v. McCain,* 258 N.C. 353, 128 S.E. 2d 835; *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668; Stansbury, N. C. Evidence 2d § 4a (1963).

Since 29 August 1966, the date the easement was taken, the only real question in this case has been what damages, if any, respondents were entitled to recover. Judge Beal, with the consent of the parties, has answered that question in a trial in which we find no prejudicial error.

No error.