STATE OF NORTH CAROLINA v. PAUL L. THIBODEAUX

No. 274A94

(Filed 28 July 1995)

## 1. Evidence and Witnesses § 1222, 1302 (NCI4th)— defendant's confession—no impairment from alcohol—telling defendant he failed polygraph—no coercive tactic

There was no merit to defendant's contention that he was intoxicated and mentally impaired at the time he made an inculpatory statement and that officers engaged in coercive tactics by repeatedly telling defendant during interrogation that he failed the polygraph test, since officers had spoken to defendant prior to the date of his confession and noticed nothing out of the ordinary on the day he confessed; the only evidence of alcohol consumption was defendant's drinking from a beer can which was half-empty when taken from defendant; and after defendant was informed that he failed the polygraph examination, he said nothing inculpatory and continued to deny any involvement in the crime.

**Am Jur 2d, Evidence §§ 742, 743.**

**Admissibility in evidence of confession made by accused in anticipation of, during, or following polygraph examination. 89 ALR3d 230.**

**Sufficiency of showing that voluntariness of confession or admission was affected by alcohol or other drugs. 25 ALR4th 419.**

## 2. Evidence and Witnesses § 2101 (NCI4th)— officers' testimony based on observations—no improper conclusion as to defendant's legal capacity to waive rights

Officers' testimony that defendant appeared sober and in control of his faculties, that he showed no signs of impairment or of being under the influence of any substance, and that he appeared to understand his rights was based on the officers' firsthand observations of defendant and did not contain an ultimate conclusion as to whether defendant did in fact have the legal capacity to waive his rights.

**Am Jur 2d, Expert and Opinion Evidence §§ 209, 272.**

**3. Criminal Law § 479 (NCI4th)— court's failure to admonish jury before every recess—no error**

Defendant was not prejudiced by the trial court's failure to instruct the jurors regarding their conduct and duties at every recess in accordance with N.C.G.S. § 15A-1236, since the judge is required only to admonish the jury at appropriate times regarding its duty and conduct; the trial court did remind the jurors of their duties on several occasions during the trial and referred them to the court's written instructions; defendant failed to object to the trial court's failure to admonish the jury; and defendant failed to show that the jurors engaged in any improper conduct or conversation or that their deliberations were tainted in any way.

**Am Jur 2d, Trial § 1077.**

**4. Evidence and Witnesses § 294 (NCI4th)— defendant's contemplation of another crime—defendant not prejudiced by evidence**

Testimony by a witness that defendant had mentioned robbing a bank to get rent money did not tend to show that defendant had actually robbed a bank or had committed any other crime or wrong, but even if it did, such testimony would have been admissible to show defendant's motive and intent to commit the crimes of robbery and murder of his landlord. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence § 408.**

**5. Evidence and Witnesses § 1715 (NCI4th)— photograph of defendant with gun—admissibility to illustrate testimony**

The trial court in a homicide prosecution did not err in admitting a photograph of defendant holding a can of beer and wearing a shoulder holster containing a .357 caliber revolver, since the photograph was admissible to illustrate a witness's testimony concerning defendant's possession and control of the murder weapon.

**Am Jur 2d, Evidence §§ 960 et seq.**

**6. Criminal Law § 113 (NCI4th)— videotape of interview— State's failure to produce—mistrial not required**

The trial court did not err in refusing to strike the testimony of a State's witness and in denying defendant's motion for mistrial based on the State's failure to produce a videotaped interview of

STATE v. THIBODEAUX

[341 N.C. 53 (1995)]

the witness, since the tape appeared to be lost; a subsequent interview of the witness was conducted; the statement given then was consistent with the videotaped statement and was provided to defendant; and there was no bad faith on the part of the State with respect to production of the videotape. N.C.G.S. § 15A-910.

**Am Jur 2d, Evidence § 979.**

**Admissibility of videotape film in evidence in criminal trial. 60 ALR3d 333.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Johnson (E. Lynn), J., on 17 December 1993 in the Superior Court, Cumberland County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to the additional judgment imposed for conspiracy to commit robbery with a firearm was allowed 4 October 1994. Heard in the Supreme Court 12 April 1995.

*Michael F. Easley, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Margaret Creasy Ciardella for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant, Paul L. Thibodeaux, was tried capitally upon a proper indictment for first-degree murder, robbery with a dangerous weapon, conspiracy to commit murder, and conspiracy to commit robbery with a dangerous weapon at the 29 November, 6 December, and 13 December 1993 Mixed Sessions of Superior Court, Cumberland County. The jury found defendant guilty of first-degree murder under the felony murder rule, guilty of robbery with a firearm, guilty of conspiracy to commit robbery with a firearm, and not guilty of conspiracy to commit murder. The trial court arrested judgment for the conviction of robbery with a firearm as that offense supported the first-degree murder conviction under the felony murder theory. Defendant was sentenced to life imprisonment for the first-degree murder conviction and ten years imprisonment for the conviction of conspiracy to commit robbery with a firearm, the sentences to run consecutively.

The State's evidence tended to show that on the morning of 2 July 1991, the body of Joseph Marshall was found on a dirt road off

Highway 301 south of Fayetteville. The victim had numerous gunshot wounds to the right side of his head. The victim's green Cadillac was discovered some distance away. There was blood splattered in and around the car. The car was dusted for fingerprints and the only identifiable print belonged to LaVerne Van.

The victim owned rental property. Defendant and LaVerne Van rented a house from him on Campbell Avenue in Fayetteville, for which they paid $300.00 per month. Defendant rented the house using the name Paul Van.

Ms. Van testified that she had pled guilty to second-degree murder, robbery with a dangerous weapon, and conspiracy to commit murder in connection with the killing of Joseph Marshall. She had entered into a plea bargain with the State which required her to testify truthfully at defendant's trial and her sentencing on those offenses was continued pending the trial. Ms. Van testified that she had met defendant in Florida and had come to Fayetteville with him. On the way, defendant bought a .357-caliber revolver at a pawn shop in South Carolina. In Fayetteville, defendant had gone under the name Paul Van.

Shortly before the murder, defendant told Ms. Van he had no money for the July rent and he mentioned robbing a bank. She suggested that he rob the victim, Joseph Marshall, instead. Defendant later told her that he had called Marshall and asked him to come over to the house. Defendant said he would tell Marshall that he had done some work for someone else and needed to go see that person to get paid. Defendant asked Ms. Van if she would go with him and if she would shoot Marshall. When Marshall arrived, defendant told him they needed to go and get the rent money from someone else and they walked outside together. Later, defendant told Ms. Van that he had borrowed some money from the victim.

Ms. Van and defendant then walked to a store and bought some beer. While drinking the beer, they continued to discuss robbing and killing Marshall. Defendant put a change of clothes for each of them in a bag with a bottle of water and the .357- caliber revolver. Marshall returned around 8:30 p.m. Defendant and Ms. Van left with Marshall to get the rent money. Ms. Van was riding on the right side of the back seat of the car. Defendant sat in the right front seat. Defendant directed Marshall to drive to a deserted area and they stopped on a small dirt road. Ms. Van heard a shot, jumped out of the car and began running. While running, Ms. Van heard several more shots. Ms. Van

then got in the back seat of the car and defendant told her that Marshall was dead. They drove a short distance and dumped Marshall's body out of the car. Defendant took the victim's wallet which contained $90.00. Defendant also took a ring from the victim's body.

Defendant cleaned the car and left it on the side of the road. Defendant and Ms. Van walked behind a church, where they washed the victim's blood off with water from the bottle defendant had in his bag. They changed clothes and defendant left their bloody clothes in a dumpster.

Ms. Van identified the defendant's .357-caliber revolver as the murder weapon. The revolver had her name and defendant's name burned into the handle. She also identified a picture of defendant showing him wearing a shoulder holster containing the same revolver.

Both on direct and cross-examination, Ms. Van admitted that she told the police several different stories before finally telling them the truth. Ms. Van stated that she had told the various other stories to the police at defendant's suggestion and because she was afraid of defendant. She also admitted to being arrested several months before the killing for possession of a sawed-off shotgun.

Don Smith of the Cumberland County Sheriff's Office testified that he talked to defendant on 4 July 1991. Defendant told Smith an elaborate story about various contacts he had had with the victim around the time of the killing. The next day Smith participated in a permissive search of defendant's house. The search revealed defendant's .357-caliber revolver, the picture of defendant with the revolver in a shoulder holster, and a box of cartridges. There was also one spent shell casing in an ashtray. On 8 July 1991, Smith saw defendant again when he and other officers went to defendant's house to take him for a polygraph test. Smith and another officer stayed at the house to talk to LaVerne Van. At that time she implicated defendant in the murder. Smith also testified that a videotaped interview with LaVerne Van, which had been taken on 18 November 1991, was generally consistent with her in-court testimony.

After being arrested for the murder, defendant made a statement to the police. In his statement, defendant said that he and a third person, not LaVerne Van, had killed Marshall. The other person shot Marshall, took the $90.00 from his wallet and gave defendant $45.00.

STATE v. THIBODEAUX

[341 N.C. 53 (1995)]

By stipulation of counsel, a ballistics report was read to the jury. Generally, the conclusion was that the bullets found in the gun which had been recovered from defendant's residence and fragments from the bullets which had killed the victim were sufficiently similar that it could be said that they would be from the "same box of cartridges or boxes of the same type and manufacture which are packaged on or about the same date."

The medical examiner testified that Joseph Marshall died as a result of four gunshot wounds to the right side of his head.

Defendant offered no evidence, but moved to dismiss the charges at the close of the State's evidence.

[1] By an assignment of error, defendant contends that the trial court erred in denying his motion to suppress his 8 July 1991 inculpatory statement. Defendant argues that the statement was not voluntary and that the trial court's findings of fact and conclusions of law are not supported by competent evidence.

A defendant's inculpatory statement must be voluntarily and understandingly made in order to be admissible. *State v. Thompson*, 287 N.C. 303, 214 S.E.2d 742 (1975). In determining whether a confession is voluntary, the court looks at the totality of the circumstances surrounding the statement. *State v. Hicks*, 333 N.C. 467, 482-83, 428 S.E.2d 167, 176 (1993). Some important factors to be considered are (1) whether defendant was in custody, (2) defendant's mental capacity, (3) the physical environment of the interrogation, and (4) the manner of the interrogation. *Id.* The State has the burden of showing by a preponderance of the evidence that the defendant made a knowing and intelligent waiver of his rights and that his statement was voluntary. *State v. Reid*, 335 N.C. 647, 440 S.E.2d 776 (1994).

The State's evidence on *voir dire* regarding defendant's confession consisted of the testimony of Deputy Sheriffs Binder and Oakes. Binder testified that he had first talked to defendant early in July of 1991. On 8 July, between 4:00 and 5:00 p.m, Binder went to defendant's home to take him to the SBI office for a polygraph examination. Binder noticed that defendant had a beer in his hand. Defendant took a drink of the beer and Binder took it away from him, telling him that he knew he should not have the beer because he was going to take a test. It was a "tall beer" and defendant had probably drunk about half of it. Defendant exhibited no obvious impairment and seemed no different than when Binder had previously talked with him.

## STATE v. THIBODEAUX

[341 N.C. 53 (1995)]

When defendant was transported to the SBI office, Binder stayed behind to talk to LaVerne Van. He then went to the SBI office, arriving around 6:00 or 6:30 p.m. Thirty to forty-five minutes later, defendant was returned from the testing area. Binder then had a conversation with defendant at the SBI office which lasted between forty-five minutes and an hour. During the course of that conversation, Binder was advised that defendant had failed the polygraph test and Binder told him that "[p]robably . . . a bunch of times."

During the forty-five minute to one hour interview at the SBI office, defendant said nothing that indicated he had been involved in the murder of Marshall. Defendant denied being with Marshall at the time of his death or robbing him. Defendant was then placed under arrest for the murder of Marshall and was transported to the Law Enforcement Center ("LEC"). On the way to the LEC defendant indicated he wanted to talk to Binder, and Binder told him to wait until they got there and defendant's rights were explained to him.

At the LEC, defendant was advised of his *Miranda* rights. He put his initials by each one of the questions which was asked of him and signed the form. This occurred around 8:14 p.m. At that time, defendant "showed no signs of being impaired." He appeared to Binder the same as on the previous occasion when Binder had talked to him and seemed to understand what was going on.

Oakes testified that he had previously seen and talked to defendant. On 8 July, he first saw defendant at the SBI office. Defendant appeared sober and in control of his faculties. Oakes was present at the LEC when defendant was advised of his *Miranda* rights. According to Oakes, defendant appeared to understand those rights and to know what he was doing when he signed the waiver. He did not appear to be under the influence of alcohol, drugs or any other impairing substance.

Defendant argues that the evidence showed that he was intoxicated and mentally impaired at the time he made the inculpatory statement. He contends that the officers engaged in coercive tactics in that during the course of the hour-long interrogation at the SBI office, defendant was repeatedly told that he failed the polygraph test. Therefore, under the totality of the circumstances, the trial court erred in holding that defendant's statement was voluntary. We disagree.

**[2]** A review of the *voir dire* testimony reveals that there was sufficient competent evidence before the trial court to support its findings which, in turn, support its conclusion that defendant's statement was voluntary. Deputy Sheriffs Binder and Oakes had spoken to defendant prior to the date of his confession and noticed nothing out of the ordinary on the day he confessed. The only evidence of alcohol consumption they saw was his drinking from a can of beer and that the beer was half-empty when taken from defendant. During the interview after defendant failed the polygraph exam, defendant said nothing inculpatory and continued to deny any involvement in the crime. Approximately four hours after he was picked up at his residence, defendant was read his *Miranda* rights at the LEC. Both deputies testified that defendant showed no signs of alcohol or drug impairment and that he appeared to understand his rights. Defendant also argues that the trial court erred in permitting Deputy Sheriffs Binder and Oakes to testify that a legal standard had been met. In support of his contention, defendant relies on this Court's holding in *State v. Daniels*, 337 N.C. 243, 446 S.E.2d 298 (1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 895 (1995). In *Daniels*, a *voir dire* was held to determine the defendant's ability to make a knowing waiver of his *Miranda* rights. This Court determined that a witness may "testify as to whether the defendant had the capacity to understand certain words on the *Miranda* form, . . . but he may not testify as to whether the defendant had the capacity to waive his rights." *Id.* at 263, 446 S.E.2d at 311.

In this case, the officers did not testify that a legal standard had been met. Rather, at various times they testified that defendant appeared sober and in control of his faculties, that he showed no signs of impairment or of being under the influence of any substance, and that he appeared to understand his rights. These statements were based on the officers' firsthand observations of defendant and did not contain an ultimate conclusion as to whether defendant did in fact have the legal capacity to waive his rights.

Even assuming *arguendo* that the officers made legal conclusions, however, any such error was harmless. In *State v. Patterson*, 288 N.C. 553, 220 S.E.2d 600 (1975), *death sentence vacated*, 428 U.S. 904, 49 L. Ed. 2d 1211 (1976), this Court said:

> We must presume the court based its finding on the competent evidence and ignored that which was incompetent. Where the court is the trier of facts, "in the absence of words or conduct

indicating otherwise, the presumption is that the judge disregarded incompetent evidence." *City of Statesville v. Bowles*, 278 N.C. 497, 502, 180 S.E.2d 111, 114-15 (1971). "[T]he court's findings of fact will not be reversed unless based only on incompetent evidence." *Cogdill v. Highway Comm. and Westfeldt v. Highway Comm.*, 279 N.C. 313, 320, 182 S.E.2d 373, 377 (1971).

*Id.* at 566-67, 220 S.E.2d at 610. Here, quite apart from the testimony complained of, there was sufficient competent evidence before the trial court to support its findings and conclusions to the effect that defendant's waiver of rights and subsequent statement were voluntarily and understandingly made.

Finally, defendant argues this Court should hold that the failure of law enforcement officers to electronically record his custodial statements is a violation of the Due Process Clauses of the state and federal constitutions. We first find it significant to note that defendant requested that the interrogation not be recorded. In any event, defendant cites no authority for this argument, and we conclude that it is without merit.

For the foregoing reasons, this assignment of error is overruled.

[3] By another assignment of error, defendant contends that the trial court erred in failing to instruct the jurors regarding their conduct and duties during court recesses as required by N.C.G.S. § 15A-1236. Prior to the introduction of evidence, the trial court gave the jurors a set of written instructions and periodically reminded them of those instructions. When the jury was dismissed for lunch on 14 December 1993, the first day of the trial, the trial court referred to the instructions, reminding the jury of its duties. At the end of the first day, the trial court again admonished the jury concerning its duties. The trial court did not repeat the instructions when it recessed on 15 December. When the trial court recessed for the day on 16 December, it instructed the jury as follows:

[T]he only proper place for you to deliberate about these matters is when you've reassembled as a group of twelve and I've actually instructed you to begin—renew your deliberations.

I also remind you about the instructions that I've given you in writing and ask you to review those, about your conduct during the course of the trial.

**STATE v. THIBODEAUX**

[341 N.C. 53 (1995)]

The jury returned its verdict on the morning of 17 December 1993.

Defendant argues that the trial court's failure to instruct at every recess is prejudicial per se and reversible error. We disagree. The trial judge must at appropriate times admonish the jury regarding its duty and conduct. N.C.G.S. § 15A-1236 (1988). However, defendant must establish that he suffered prejudice as a result of any failure of the trial court to admonish the jury. *State v. Harris*, 315 N.C. 556, 566, 340 S.E.2d 383, 389 (1986). Furthermore, defendant must object to any failure of the trial court to give the required admonitions to the jury in order to preserve this issue for appeal. *Id.*

In this case, defendant concedes that he did not object to the trial court's failure to admonish the jury. Furthermore, defendant has failed to show that he was prejudiced. The trial court did remind the jurors of their duties on several occasions during the trial, as well as referring them to the written instructions. Defendant does not contend, and did not show, that jurors engaged in any improper conduct or conversation or that their deliberations were tainted in any way. This assignment of error is overruled.

**[4]** By another assignment of error, defendant contends that the trial court erred in admitting evidence regarding a prior criminal act of the defendant. Over defendant's objection, the trial court admitted the testimony of State's witness LaVerne Van that she had a conversation with defendant about their lack of money and the need to pay the rent at the first of the month. Van further testified that defendant had mentioned robbing a bank to get the money. Defendant argues that Van's testimony was inadmissible under Rule 404(b) because it was "evidence of other crimes, wrongs, or acts" to show defendant's character.

Rule 404(b) of the North Carolina Rules of Evidence provides that "evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused." *State v. Weaver*, 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986); *see also* 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 94 (4th ed. 1993). "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1988).

Thus, even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit

them, it is admissible under Rule 404(b) so long as it also "is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried."

*State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987) (quoting *State v. Morgan*, 315 N.C. 626, 637, 340 S.E.2d 84, 91 (1986)), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

In this case, the evidence complained of did not tend to show that defendant had actually robbed a bank or had committed any other crime or wrong. That evidence only tended to show that defendant "said something about robbing a bank" while he and Ms. Van were discussing their monetary difficulties. The testimony at issue did not relate to any prior crime, wrong or act of the defendant.

Even assuming *arguendo* that the evidence did relate to a prior crime, wrong or act, we find that the testimony was admissible. Evidence of other crimes, wrongs or acts committed by a defendant is admissible for "purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake, entrapment or accident." N.C.G.S. § 8C-1, Rule 404(b) (1988). Moreover, the Rule 404(b) list is neither exclusive nor exhaustive in addressing the permissible purposes for admitting evidence of other crimes. *State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84.

Here, Ms. Van's testimony reflected defendant's state of mind immediately prior to the murder. The testimony was not offered to show defendant's propensity for criminal conduct, but to demonstrate his motive and intent to commit the crimes charged. In addition, evidence of other crimes committed by a defendant is admissible under Rule 404(b) if "it establishes the chain of circumstances or context of the charged crime." *State v. White*, — N.C. —, —, — S.E.2d —, —, 1995 WL 326523, at 11 (1995) (citing *State v. Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990)). In this case, the proximity of defendant's statement to the murder as well as defendant's monetary difficulties established the chain of circumstances leading up to the murder. This assignment of error is overruled.

**[5]** By another assignment of error, defendant contends that the trial court erred in admitting a photograph which defendant argues was irrelevant and inflammatory. Over defendant's objection, the trial court admitted State's Exhibit #18, a photograph taken by State's witness LaVerne Van of defendant holding a can of beer and wearing a shoulder holster containing a .357-caliber revolver. Ms. Van testified

that the weapon in the photograph was the murder weapon. Defendant argues that the photograph was inadmissible because it was unfairly prejudicial and this prejudice outweighed any probative value. Rule 403 of the North Carolina Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C.G.S. § 8C-1, Rule 403 (1994). Unfairly prejudicial evidence is evidence that possesses "an undue tendency to suggest a decision on an improper basis, usually an emotional one." *State v. Hennis*, 323 N.C. 279, 283, 372 S.E.2d 523, 527 (1988). The decision as to whether any evidence is more probative than unfairly prejudicial is within the discretion of the trial court. *Id.* at 285, 327 S.E.2d at 527. An abuse of discretion occurs only when the trial court's ruling is "so arbitrary that it could not have been the result of a reasoned decision." *Id.*

In this case, there was no evidence that the photograph was used solely to arouse the passions of the jury. Instead, the photograph was used to illustrate Ms. Van's testimony concerning defendant's possession and control of the murder weapon. Because the photograph had probative value and there was minimal potential for any unfair prejudice, we conclude that the trial court did not abuse its discretion. This assignment of error is overruled.

**[6]** By another assignment of error, defendant contends that the trial court erred in refusing to strike the testimony of State's witness LaVerne Van and in denying defendant's motion for a mistrial. On 16 March 1992, defendant filed a motion requesting that the trial court order the State to disclose all statements of its witnesses. After the direct examination of Ms. Van, defendant maintained that the State had failed to produce the transcripts or tapes of at least four taped interviews of Ms. Van, including a videotaped interview that occurred after she was arrested on 15 July 1991.

The trial court held a *voir dire* hearing in which the evidence showed that the State had interviewed Ms. Van on five separate occasions. Deputy Sheriff Don Smith testified that statements had been taken from Ms. Van on 4 July, 8 July, and 15 July 1991 and on 18 November 1992. Smith also testified that there was one additional interview of Ms. Van which was videotaped sometime between 15

July 1991 and 18 November 1992. Defendant received a copy of each of the interviews except the videotaped interview. Further testimony indicated that the tape of that interview had been lost and that no one could find it. Testimony also tended to show that the 18 November 1992 interview was conducted as a result of the lost tape and that the statement given then was consistent with the videotaped statement.

After a State's witness has testified on direct examination, and upon motion of defendant, the trial court shall "order the State to produce any statement of the witness *in the possession of the State* that relates to the subject matter as to which the witness has testified." N.C.G.S. § 15A-903(f)(2) (1988) (emphasis added). The trial court found that there was no bad faith on the part of the State with respect to the production of the videotape, and since it appeared to be lost, it was impossible for the State to comply with the rule or with the previous court order to provide Ms. Van's prior statements to defense counsel after she had testified. The trial court also indicated that defense counsel would be allowed considerable leeway to examine the appropriate witnesses as to the content or the absence of the videotape if he chose to bring those matters to the jury's attention.

N.C.G.S. § 15A-910 provides that if the trial court determines that a party has failed to comply with the statutory discovery procedures it may impose sanctions, including a mistrial. However, this section is permissive and not mandatory. The choice of which sanction to apply, if any, rests in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. *State v. Gladden*, 315 N.C. 398, 340 S.E.2d 673, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986). Here, the trial court did not abuse its discretion by denying defendant's motion to strike the testimony of Ms. Van or by denying his motion for mistrial. This assignment of error is without merit.

By another assignment of error, defendant contends that the trial court erred by denying his motions to dismiss and for a directed verdict due to the insufficiency of the evidence. Defendant argues that without his inadmissible inculpatory statement, the sole evidence against him was the inconsistent and extremely biased testimony of Ms. Van. Because there was no credible evidence which raises even a reasonable suspicion that defendant committed the murder, the case should have been dismissed. We disagree.

When there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been

committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied. *State v. Locklear*, 322 N.C. 349, 368 S.E.2d 377 (1988). In the present case, we have already determined that defendant's inculpatory statement was properly admitted. Moreover, there was substantial evidence tending to show that defendant and LaVerne Van conspired to rob and murder Joseph Marshall, that defendant did in fact shoot Marshall in the head four times and kill him, and that defendant thereafter removed $90.00 from Marshall's wallet. Thus, there was substantial evidence tending to show that defendant had committed each of the crimes charged. Accordingly, the trial court did not err in denying defendant's motions to dismiss and for a directed verdict. This assignment of error is without merit.

For the foregoing reasons, we conclude that defendant received a fair trial free of prejudicial error.

NO ERROR.