STATE OF NORTH CAROLINA, Plaintiff v. MARION LAMONT FLOWERS,
Defendant

No. COA96-1532

(Filed 3 March 1998)

**1. Evidence and Witnesses § 1331 (NCI4th)— juvenile confession—warnings before confession—evidence sufficient**

The trial court did not err in the prosecution of a juvenile as an adult for armed robbery and assault by denying defendant's motion to suppress his confession where the court's finding that a warning which fully satisfied *Miranda* and N.C.G.S. § 7A-595(a) was read to defendant before he was questioned is supported by competent evidence and is therefore conclusive.

**2. Evidence and Witnesses § 1276 (NCI4th)— juvenile confession—explanation of rights—sufficient**

The trial court did not err in the prosecution of a juvenile as an adult for armed robbery and assault by denying defendant's motion to suppress his confession where defendant contended that the significance of his rights was not explained to him. An interrogating officer need not explain *Miranda* rights in greater detail than required by *Miranda* even when the suspect is a minor, nor must the officer explain juvenile rights in greater detail than required by N.C.G.S. § 7A-595(a).

**3. Evidence and Witnesses § 1263 (NCI4th)— juvenile confession—*Miranda* and statutory rights—express waiver not required**

The trial court did not err in the prosecution of a juvenile as an adult for armed robbery and assault by denying defendant's motion to suppress his confession where defendant argues that he never expressly waived his rights. The rule in North Carolina that a person could waive his *Miranda* rights only by an express statement has long since been repudiated and no statute requires an express waiver of juvenile rights.

**4. Evidence and Witnesses § 1276 (NCI4th)— juvenile defendant—waiver of rights—capacity to understand**

The trial court correctly concluded that a juvenile defendant being tried as an adult for armed robbery and assault understood his *Miranda* rights and knowingly, intelligently, and voluntarily waived those rights before making a statement. There was no evi-

**STATE v. FLOWERS**

[128 N.C. App. 697 (1998)]

dence of coercion and, although defendant argues that he lacked the capacity to understand his rights because of his youth and low mental ability, he invoked his right to remain silent when asked about an unrelated matter, indicating that he had the capacity to understand and exercise his rights. Moreover, he denied his participation in this robbery until his mother told him to tell the truth, suggesting that he was aware that speaking to the police could have negative consequences.

Appeal by defendant from judgment entered 31 May 1996 by Judge D. Jack Hooks, Jr. in Columbus County Superior Court. Heard in the Court of Appeals 18 September 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Elizabeth R. Bare, for the State.*

*William L. Davis, III, for defendant-appellant.*

LEWIS, Judge.

Pursuant to a plea agreement, defendant pled guilty to robbery with a dangerous weapon and assault with a deadly weapon with intent to kill inflicting serious injury. We affirm his convictions.

At approximately 2:00 a.m. on 12 April 1995, the BP Hasty Mart in Chadbourn, North Carolina was robbed by two black males. In the course of the theft a customer, Larry Harrison, was shot in the neck by one of the robbers. He survived.

Investigators developed a list of suspects that included defendant, who was one month shy of his fourteenth birthday. On the evening of 13 April 1995, defendant's mother, Teresa Kelly, learned that the police were looking for her son. On her own volition she brought defendant to the Chadbourn Police Department. Defendant and his mother were escorted to a private room by Special Agent Warner and Detective Coffman. Coffman told defendant's mother that her son was in a lot of trouble and that the police needed to speak with him.

Before asking defendant any questions, Special Agent Warner read defendant his rights in the presence of defendant's mother. After each right was read, Warner asked defendant and his mother if they understood. They answered "Yes" each time. Defendant made no affirmative statement regarding whether he agreed to talk to the investigators or whether he wanted an attorney present. The investi-

gators proceeded to interrogate defendant in his mother's presence for 1½ to 2 hours.

When first asked about the Hasty Mart robbery, defendant denied any involvement and indicated that he was at home at the time the robbery occurred. Defendant's mother intervened and told him to tell the truth. Defendant then changed his story and gave a statement implicating himself in the Hasty Mart robbery. When he was asked by Detective Coffman about a different, unrelated crime, defendant indicated that he did not want to talk about it. The officers ended the interrogation and charged defendant for his part in the Hasty Mart robbery.

The State filed petitions alleging that defendant was a delinquent juvenile, that he had committed robbery with a dangerous weapon in violation of N.C.G.S. § 14-87 (1993), and that he had attempted to murder Larry Harrison in violation of N.C.G.S. § 14-17 (1993). After a hearing the court found probable cause as to robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill inflicting serious injury in violation of N.C.G.S. § 14-32(a) (1993). The court found no probable cause for attempted murder. The State moved to transfer the case to superior court for trial of defendant as an adult pursuant to N.C.G.S. §§ 7A-608 and 7A-610 (1995). The motion was granted and the court made specific findings as to why a transfer was appropriate.

A grand jury indicted defendant for armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant moved to dismiss the case from superior court for lack of jurisdiction and moved to suppress the statement defendant had given investigators the day after the robbery. The trial court conducted a hearing on the defense motions and heard testimony from Special Agent Warner, defendant's mother, defendant, and a clinical psychologist who had examined defendant. Both defense motions were denied. On 28 May 1996, defendant pled guilty to armed robbery and assault with a deadly weapon in exchange for the State's dismissal of the conspiracy charge, reserving the right to appeal the court's denial of his suppression motion. He was sentenced on 31 May 1996 and now appeals his convictions.

Defendant has abandoned assignments of error four and six by failing to argue them in his brief. N.C.R. App. P. 28.

STATE v. FLOWERS

[128 N.C. App. 697 (1998)]

**[1]** Defendant first assigns error to the trial court's denial of his motion to suppress his confession of 13 April 1995. He argues that the court erred in concluding he was not in custody when he made the confession. For purposes of this appeal, we will assume without deciding that defendant was in custody at the time his confession was obtained.

Defendant argues that despite being in custody, he was not informed of his constitutional and statutory rights until after he was questioned and therefore his confession was illegally obtained. The trial court found as a fact that Special Agent Warner read the following rights to defendant and his mother before any questioning began:

> You have the right to remain silent. Do you understand this right? Anything you say can be and may be used against you. Do you understand this right? You have the right to have a parent, guardian, or custodian present during questioning. Do you understand? You have the right to talk with a lawyer for advice before questioning and to have that lawyer with you during any questioning. If you cannot afford to hire a lawyer, one will be appointed to represent you at no cost before any questioning, if you wish.

This warning fully satisfied the requirements of N.C. Gen. Stat. § 7A-595(a) (1995) and *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). The court's finding that this warning was read to defendant before he was questioned is supported by competent evidence and is therefore conclusive on appeal. *State v. Gibson*, 342 N.C. 142, 146-47, 463 S.E.2d 193, 196 (1995).

**[2]** Defendant argues that even if he was read his rights before he was questioned, the significance of those rights was not explained to him. An interrogating officer need not explain the *Miranda* rights in any greater detail than what is required by *Miranda*, even when the suspect is a minor. *See, e.g., California v. Prysock*, 453 U.S. 355, 356-57, 361, 69 L. Ed. 2d 696, 699-700, 702 (1981); *Fare v. Michael C.*, 442 U.S. 707, 726, 61 L. Ed. 2d 197, 213 (1979); *State v. Brown*, 112 N.C. App. 390, 395-97, 436 S.E.2d 163, 166-68 (1993), *aff'd per curiam*, 339 N.C. 606, 453 S.E.2d 165 (1995). Nor is there a statutory duty to explain the juvenile rights in greater detail than what is required by G.S. 7A-595(a). The warning defendant received was sufficient.

**[3]** Defendant contends that even if he was sufficiently informed of his juvenile rights, he did not waive those rights before confessing. In

support of this contention, defendant first asserts that he never expressly waived his rights to remain silent or to the assistance of counsel. It was once the rule in North Carolina that a person could waive his *Miranda* rights only by an express statement of waiver, but that rule has long since been repudiated. *North Carolina v. Butler*, 441 U.S. 369, 373, 60 L. Ed. 2d 286, 292 (1979). Moreover, we find no statute that requires a waiver of juvenile rights to be expressly made in order to be valid. Defendant was entirely capable of waiving his constitutional and statutory rights without executing a written waiver. *See In re Horne*, 50 N.C. App. 97, 101-02, 272 S.E.2d 905, 908-09 (1980).

**[4]** Defendant next argues that he did not waive his rights knowingly, willingly, or intelligently because he did not understand them or the consequences of waiving them. More specifically, defendant argues that he lacked the capacity to understand his rights because of his youth and low mental ability.

A statement made during custodial interrogation is admissible only if the juvenile knowingly, willingly, and understandingly waived his rights. N.C. Gen. Stat. § 7A-595(d); *State v. Thibodeaux*, 341 N.C. 53, 58, 459 S.E.2d 501, 505 (1995). A defendant's youth or subnormal mental capacity does not necessarily render him incapable of waiving his rights knowingly and voluntarily. *State v. Fincher*, 309 N.C. 1, 8, 305 S.E.2d 685, 690 (1983). The State must show by a preponderance of the evidence that the defendant made a knowing and intelligent waiver of his rights and that his statement was voluntary. *Thibodeaux*, 341 N.C. at 58, 459 S.E.2d at 505.

At the suppression hearing, Dr. Richard Rumer, a clinical psychologist, testified as to defendant's mental capacity based upon his testing and interview of defendant. Dr. Rumer stated that one test revealed that defendant had problems paying attention. Dr. Rumer stated that he also tested defendant using the Wechsler Intelligence Scale test (the "WIS III"), which, according to Dr. Rumer, is the standard intelligence test in use today. On the WIS III, defendant functioned in the mildly retarded range, with a full scale I.Q. of 56 and a verbal I.Q. of 48. Based on these tests and others, Dr. Rumer believed that defendant's mental deficiencies substantially impaired his ability to understand his *Miranda* rights. On cross-examination Dr. Rumer admitted that it was possible for psychologists to arrive at different results using essentially the same standardized tests. Dr. Rumer also

admitted that it is possible for someone taking these tests to not try his best, either intentionally or for lack of interest.

The trial court made extensive findings of fact after hearing the testimony of Dr. Rumer, Special Agent Warner, defendant's mother, and defendant himself. The findings are summarized except where quoted in the three paragraphs that follow.

Defendant and his mother were fully advised of defendant's juvenile and *Miranda* rights. After each right was read, Special Agent Warner asked defendant and his mother if they understood, and both replied yes. Defendant's mother was present at all times during questioning. When first questioned, defendant denied that he participated in the Hasty Mart robbery. Defendant's mother intervened and told defendant to tell the truth. Defendant then changed his story and gave the officers a detailed account of his involvement in the Hasty Mart robbery. Special Agent Warner transcribed defendant's answers and defendant and his mother signed the transcript once the interrogation had ended.

Defendant's education at the time was at the seventh grade level, although there was evidence that defendant did not actually perform at that level. Defendant "may be of less than average intelligence at least as tested by I.Q. tests and other personality profile tests and intelligence tests." When he was interrogated, however, defendant's answers were coherent, responsive, and reasonable in relation to the questions asked. There was no evidence that defendant was under the influence of alcohol or drugs or that he was physically injured at the time of interrogation. There was no evidence that any promises, threats, or shows of force were directed at defendant to induce his making a statement or waiving his rights. Defendant was allowed to use the bathroom.

At one point during the questioning, defendant was asked about an unrelated event but refused to talk about it. His refusal was honored by the investigators. Defendant never indicated that he did not want to discuss the Hasty Mart robbery or that he wanted an attorney.

On these findings, the court concluded that defendant in fact understood his *Miranda* rights and that he knowingly, intelligently, and voluntarily waived those rights before making his statement. We hold that the trial court's conclusions of law were supported by its findings and that its findings were supported by the evidence.

There is no evidence of coercion. On the issue of whether defendant waived his rights knowingly, we find it most significant that defendant *invoked* his right to remain silent when he was asked about a matter unrelated to the Hasty Mart robbery. This indicates defendant had both the capacity to understand his rights and the capacity to exercise them freely. *See Fincher*, 309 N.C. at 20, 305 S.E.2d at 697 (juvenile defendant who claimed he was of subnormal mental capacity refused to make a second statement until he confronted a co-defendant; defendant thereby demonstrated an awareness "of his right to control the timing and subject matter of police questioning"). In addition, defendant at first denied that he participated in the Hasty Mart robbery but changed his story after his mother told him to tell the truth. His initial denial of involvement suggests he was well aware that speaking to the police could have negative consequences. The trial court's conclusion that defendant knowingly, intelligently, and voluntarily waived his rights was supported by the findings of fact. We find no error in the court's denial of defendant's motion to suppress.

Defendant's remaining assignments of error pertain to issues not appealable of right. Because defendant entered a guilty plea, his right to appeal is limited to those issues found in N.C.G.S. §§ 15A-979 (1988) (motions to suppress evidence) and 15A-1444 (Cum. Supp. 1996) (sentencing). G.S. 15A-1444(e). After examining the record we decline to review his remaining assignments by certiorari.

Affirmed.

Judges MARTIN, John C. and McGEE concur.