STATE OF NORTH CAROLINA v. HENRY MICHAEL McKEITHAN

No. COA99-872

(Filed 7 November 2000)

### 1. Confessions and Incriminating Statements— voluntariness—juvenile

The trial court did not err in a double first-degree murder case by denying defendant juvenile's motion to suppress his confession, because: (1) defendant was advised both orally and in writing of his rights under Miranda, and the warning fully satisfied the requirements of N.C.G.S. § 7A-595 (now N.C.G.S. § 7B-2101); and (2) defendant stated he understood his rights, was willing to waive his rights, and executed a written waiver.

### 2. Criminal Law— joinder—no abuse of discretion

The trial court did not abuse its discretion in a double first-degree murder case by joining defendant's case with that of one of his two accomplices under N.C.G.S. § 15A-926(b)(2) even though parts of defendant's statement were redacted under N.C.G.S. § 15A-927(c)(1)(b), including the omissions from his statement that defendant was not in the car while his two accomplices talked, that they were just messing around laughing and stuff, and that at first they were going to take one of the victims swimming, because: (1) the State's evidence reveals that defendant had conversations with one accomplice about killing the victim and his father, defendant accompanied that accomplice to kill the victim, and defendant actively participated in the murders; and (2) the inclusion of the deleted statements would have actually strengthened the State's case since they were made during a discussion of how to murder the victims.

### 3. Confessions and Incriminating Statements— accomplice's redacted confession—failure to give limiting instruction

The trial court did not violate defendant's rights under the Confrontation Clause in a double first-degree murder case by failing to instruct the jury that it could use an accomplice's statement against the accomplice only, because: (1) the State redacted the accomplice's confession carefully, and the statement retained a natural narrative flow; (2) there are no indications that the State altered the confession or that defendant was incriminated

by the accomplice's confession; and (3) even if there was error, the error was harmless beyond a reasonable doubt based on the overwhelming evidence of defendant's guilt including his own confession.

**4. Burglary and Unlawful Breaking or Entering— first-degree burglary—nighttime**

The trial court erred by failing to give an instruction on the definition of nighttime for a first-degree burglary and a new trial must be held on this charge, because: (1) N.C.P.I., Crim. 214.10 fn. 3 provides that the trial judge must instruct the jury on the definition of nighttime if there is doubt as to whether it was nighttime; and (2) the conflicting evidence was sufficient to create a jury issue as to whether defendant broke and entered the house during the nighttime.

**5. Homicide— first-degree murder—alternative grounds— premeditation and deliberation—felony murder**

Although defendant must receive a new trial on his first-degree burglary conviction and this charge was one of the grounds under the felony murder rule for defendant's two first-degree murder convictions, this disposition does not affect defendant's two first-degree murder convictions because: (1) the jury found defendant guilty of first-degree murder on three alternative grounds; (2) the jury also based its convictions on premeditation and deliberation and the felony murder rule with the underlying felony of first-degree arson; and (3) either of the remaining two grounds would be sufficient on their own.

**6. Jury— peremptory challenges—excusal of eight African-American jurors—nondiscriminatory basis—conclusory allegations insufficient to establish prima facie case**

The trial court did not err in a double first-degree murder case by allowing the State to use peremptory challenges to exclude eight African-American potential jurors and by concluding that defendant failed to establish a prima facie case of discrimination, because: (1) defendant has alleged nothing but conclusory allegations of discriminatory conduct and has not cited to any place in the record where the prosecutor's comments may be interpreted as discriminatory; and (2) defendant has not argued that the prosecutor struck a disproportionate number of African-American jurors.

STATE v. McKEITHAN

[140 N.C. App. 422 (2000)]

7. **Discovery— copies of State's photographs—testing performed by SBI**

The trial court did not err in a double first-degree murder case by denying defendant's request for copies of the State's photographs and for information and data related to testing performed by the SBI, because: (1) N.C.G.S. § 15A-903(d) requires only that the State make the photographs available to defendant for inspection and copying, and defendant does not point to anything in the record to show the State failed to comply with the statute; and (2) any error in failing to give defendant the information concerning the SBI lab results revealing the presence of gasoline on most of the items tested was harmless beyond a reasonable doubt based on the overwhelming evidence of defendant's guilt and defendant's confession that he doused the beds in gasoline.

8. **Criminal Law— prosecutor's argument—propriety of accomplice's confession**

The trial court did not abuse its discretion in a double first-degree murder case by allowing the prosecutor to comment during closing arguments that an accomplice's attorney attempted to cast doubt upon the accomplice's confession based on the fact that the confession sinks their client just as surely as an iceberg sunk the Titanic, because: (1) the prosecutor made his argument in direct response to an argument that the accomplice's confession resulted from unconstitutional police conduct; (2) the prosecutor did not make a degrading comment about the defendant or his counsel; and (3) the prosecutor's comments were explicitly directed as a response to the accomplice's counsel, rather than to defendant's counsel.

9. **Criminal Law— trial court's failure to order transcript—no prejudicial error**

The trial court did not commit prejudicial error in a double first-degree murder case by failing to order defendant a transcript of the 24 July motion to suppress hearing, because: (1) the hearing on the motion to suppress took place approximately one week prior to trial; (2) defendant had the same counsel for the hearing and trial, and the same judge presided; (3) both counsel and defendant were present for both proceedings; and (4) a review of the transcripts shows that the testimony was substantially the same.

STATE v. McKEITHAN

[140 N.C. App. 422 (2000)]

**10. Accomplices and Accessories— accessory before the fact— jury instruction—no prejudicial error**

The trial court did not commit prejudicial error by reading defendant's name in its instruction to the jury on accessory before the fact with respect to defendant's accomplice, because the State presented overwhelming evidence of defendant's guilt.

**11. Homicide— first-degree murder—jury instructions— deadly weapon—premeditation and deliberation**

The trial court did not err in a double first-degree murder case by its instructions to the jury on the definition of a deadly weapon and the definition of premeditation and deliberation, because the jury charge as a whole was correct and the error and omissions pointed out by defendant were not prejudicial.

**12. Conspiracy— one guilty verdict—judgment on two counts error**

The trial court erred by entering judgment on two counts of conspiracy to commit murder when the jury only returned one guilty verdict as to conspiracy.

Appeal by defendant from judgments entered 28 August 1998 by Judge Wiley F. Bowen in Harnett County Superior Court. Heard in the Court of Appeals 14 August 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Joan M. Cunningham, for the State.*

*Bain & McRae, by Alton D. Bain, for the defendant.*

EAGLES, Chief Judge.

This appeal arises out of the joint trial and conviction of defendant and one of his two accomplices for two brutal murders. The second accomplice was tried and convicted separately.

The State's evidence showed that seventeen year-old defendant Henry Michael McKeithan participated with Vera Lee (Lee) and Robby Brewington (Robby) in the murders of Frances and Brian Brewington. Eighty-two year old Frances was Robby's grandmother and Brian's great-grandmother. Eight-year-old Brian was Robby's nephew and the son of Robby's brother Patrick. Robby, Brian and Frances lived together in Dunn.

The genesis of these murders was an intimate relationship between Robby and Lee. The couple planned to marry and purchase a trailer. However, their lack of funds and poor credit prevented them from fulfilling their dream. In order to obtain the necessary money, Robby and Lee conceived a plan to kill Brian and Patrick and collect life insurance benefits on their lives. Accordingly, Robby fraudulently acquired life insurance policies on Brian and Patrick by falsifying Patrick's signature. The face value of the policy on Patrick was $75,000.00 while the policy on Brian was for $58,552.00.

Shortly after Robby obtained the insurance policies, Lee began to solicit individuals to kill Brian and Patrick. Her friend Chris Wilson testified that Lee talked constantly of killing Brian and harbored great resentment for Frances. At one point, Lee offered Wilson $10,000 to kill Brian. Lee also attempted to recruit Wilson's roommate Danielle to participate in the killings.

In mid-May of 1997, Lee approached the defendant. According to the defendant's statement, Lee offered him $1300.00 to murder Patrick. The two searched for Patrick on three separate occasions to commit the crime. Apparently, Lee then became disenchanted with the idea of killing Patrick and focused her attention on Brian. Defendant told the SBI that he was hesitant about this idea and had suggested to her that they kidnap Brian for ransom instead. However, Lee rebuffed defendant's suggestion.

On 1 June 1997, Robby and Lee began to plan the murders. Robby told Lee to make it look like a robbery, to stab "Grandma" and Brian and set the house on fire. On 11 June 1997, Robby talked to Lee on the phone and they finalized plans for that night. Around midnight, defendant and Lee went to Wilson's apartment. Lee again began to talk about killing either Brian or Patrick. Lee and Wilson argued and Lee angrily left the house with the defendant.

After leaving Wilson's apartment, Lee and the defendant drove past Robby's house honking the horn to wake him up. According to Robby's statement, he heard the horn at approximately 3:00 a.m. Upon hearing the car horn, Robby got up and began dressing for work. He "got (his) Sunday shoes and (his) Sunday best for Brian and grandma's funeral." He took these belongings along with the insurance policies and drove to Hardee World to meet with Lee and the defendant. While Robby was preparing, the defendant and Lee were buying two gallon jugs at Winn-Dixie and filling them with gasoline. In the Hardee World parking lot, Robby placed some of his belongings in the back of Lee's car.

Lee and the defendant then started back to the Brewington home. On their way, the two decided that "it would be nice if we made it look like a burglary, like they had got up and we freaked out and we stabbed them." Defendant and Lee parked behind the Brewington house. Each put on rubber gloves and took a gallon jug of gasoline. The pair entered the house through the back screen door and went to the bedroom where Brian and Frances both slept.

Once in the bedroom, Lee handed the knife to the defendant and told him to kill Brian. However, defendant hesitated and told Lee that he could not do it. Instead he grabbed a jug of gasoline and began pouring it around the bedroom. When he finished, Lee handed the defendant another knife and told him to kill "the old lady" and that she would handle Brian. Lee placed the knife to Brian's throat waking him up. Brian began to scream awaking Frances. Frances shrieked, "[w]ho are you" and then began yelling "[o]h, Lord." Oh Lord." Defendant then began to stab Frances repeatedly.

When defendant stopped stabbing Frances, he began to look for his lighter. Realizing that he had left his lighter outside, defendant ran to the car. While defendant was outside, Lee ignited a dishrag in the heater and when the defendant returned, she threw the lighted rag onto the gasoline. As defendant ran out of the burning bedroom, he heard Frances scream, "[o]h, help me. Help me. Oh." Defendant and Lee raced to the defendant's house where they burned their clothes and gloves and buried the knife.

On the morning of the murders, Harnett County Sheriff's Deputy Jerry Edwards was reporting to work at approximately 6:15 a.m. Edwards saw smoke coming from Frances' residence and called his dispatch officer to contact the Harnett County Fire Department. After the firefighters extinguished the fire, officers conducted a preliminary investigation. The officers concluded that the fire was deliberately set. The officers based this conclusion on the following factors: (1) the color of the smoke and flames; (2) the elimination of the appliances and electrical wiring as possible causes; (3) the "pour pattern" of the gasoline; (4) the odor of gasoline and (5) the presence of the half full gallon jug of gasoline.

Detective Billy Wade of the Harnett County Sheriff's Department, along with SBI Special Agents Gail Beasley and John Hawthorne, began a criminal investigation that included an interview with Robby. During the interview, Robby confessed his involvement and implicated both Lee and the defendant.

STATE v. McKEITHAN

[140 N.C. App. 422 (2000)]

On 13 June 1997, Wade and Hawthorne obtained arrest warrants for defendant and arrested him at his house. Wade read defendant his *Miranda* and juvenile rights at that time. Once at the Dunn Law Enforcement Center, Wade readvised defendant of his rights and completed the juvenile rights form. Defendant waived his rights and made a statement admitting his involvement in the murders. A jury convicted the defendant of two counts of first degree murder, one count of first degree arson, one count of first degree burglary, and one count of conspiracy to commit murder. Defendant received consecutive life sentences for the two murders, and incarceration for 64-86 months for first degree arson, 64-86 months for first degree burglary, and 157-198 months for conspiracy to commit murder. Defendant appeals.

## I. Juvenile Rights Form

[1] Defendant first assigns error to the trial court's denial of his motion to suppress his confession. Defendant claims that he did not knowingly, willingly and voluntarily waive his rights under G.S. § 7A-595 (1995) (repealed by N.C. Sess. Laws 1998-202 s.5 eff. July 1 1999), *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966) and *State v. Miller*, 344 N.C. 658, 477 S.E.2d 915 (1996). The trial court found as a fact that Special Agent Billy Wade advised defendant both orally and in writing of his rights under *Miranda* and G.S. § 7A-595. We note that G.S. § 7A-595 has been repealed and replaced with G.S. § 7B-2101 (1999) which offers juvenile defendants similar guarantees effective 1 July 1999. *See* S.L. 1998-202 s.6. Defendant stated that he understood his rights, was willing to waive his rights and executed a written waiver. The record establishes that Agent Wade read defendant the following warning:

> You have the right to remain silent . . . Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer one will be appointed for you before questioning if you wish. You have the right to have your parent, guardian, or custodian with you during questioning. If you decide to answer questions now without a lawyer, parent, guardian or custodian present, you will still have the right to stop answering questions at any time until you talk to a lawyer, parent, guardian, or custodian.

Defendant argues that there is no requirement of indigency or financial need in order for an attorney to be appointed under the juvenile

STATE v. McKEITHAN

[140 N.C. App. 422 (2000)]

statute. Defendant contends that the warning here is contrary to G.S. § 7A-595's mandate that a juvenile is always entitled to an attorney regardless of financial stature. Accordingly, defendant contends that because defendant did not know his rights, defendant could not have knowingly, voluntarily and willingly waived his rights.

Obedient to *State v. Flowers*, 128 N.C. App. 697, 497 S.E.2d 94 (1998), we hold that the trial court committed no error and that the warning given fully satisfied the requirements of G.S. § 7A-595. In *Flowers*, this Court considered the following warning given to a juvenile.

> You have the right to remain silent. Do you understand this right? Anything you say can be and may be used against you. Do you understand this right? You have the right to have a parent, guardian, or custodian present during questioning. Do you understand? You have the right to talk with a lawyer for advice before questioning and to have that lawyer with you during any questioning. If you cannot afford to hire a lawyer, one will be appointed to represent you at no cost before any questioning, if you wish.

*Flowers*, 128 N.C. App. at 700, 497 S.E.2d at 96. This warning is nearly identical to the warning given here. While not directly addressing the arguments advanced here, the *Flowers* Court pronounced that "this warning fully satisfied the requirements of N.C. Gen. Stat. § 7A-595(a) (1995) and *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966)." *Id.*

In *State v. Miller*, 344 N.C. 658, 477 S.E.2d 915 (1996), our Supreme Court considered a case where the arresting officers could not locate a juvenile rights form before questioning a juvenile murder suspect. Instead, the officers used an adult *Miranda* form and inserted the additional clause, "[d]o you wish to answer questions without your parents/parent present?" *Miller*, 344 N.C. at 664, 477 S.E.2d at 919. Again, this warning is nearly identical to the warning given in the instant case. Our Supreme Court upheld the reading of this warning as sufficient to satisfy both *Miranda* and G.S. § 7A-595. *Id.* at 666, 477 S.E.2d at 921.

In light of these cases, we hold that the warnings here were sufficient to satisfy G.S. § 7A-595 and *Miranda*. While we urge law enforcement agencies to comply literally with the provisions of the new juvenile interrogation procedures statute, G.S. § 7B-2101

(1999), on this record, we find no error in the denial of the motion to suppress.

## II. Joinder

[2] Defendant argues that the trial court erred by joining his case for trial with defendant Brewington's case. Our State "has a strong policy of favoring consolidated trials of defendants accused of collective criminal behavior." *State v. Roope*, 130 N.C. App. 356, 364, 503 S.E.2d 118, 124, *disc. review denied*, 349 N.C. 374, 525 S.E.2d 189 (1998). A trial court's decision on joinder and severance rests within its discretion and absent an abuse of that discretion, this Court will not overturn it. *Id.* at 364-65, 503 S.E.2d at 125. To overturn the trial court's joinder decision, the defendant must show that joinder has deprived him of a fair trial. *Id.* at 365, 503 S.E.2d at 125 (citing *State v. Carson*, 320 N.C. 328, 335, 357 S.E.2d 662, 666-67 (1987)). Under G.S. § 15A-926(b)(2) (1999), the trial court may join defendants for trial

a. When each of the defendants is charged with accountability for each offense; or

b. When even if all of the defendants are not charged with accountability for each offense, the several offenses charged:

1. Were part of a common scheme or plan; or

2. Were part of the same act or transaction; or

3. Were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others.

However,

(1) When a defendant objects to joinder of charges against two or more defendants for trial because an out-of-court statement of a co-defendant makes reference to him but is not admissible against him, the court must require the prosecutor to select one of the following courses:

a. A joint trial at which the statement is not admitted into evidence; or

b. A joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted so that the statement will not prejudice him; or

STATE v. McKEITHAN

[140 N.C. App. 422 (2000)]

c. A separate trial of the objecting defendant.

(2) The court, . . . on motion of the defendant other than under subdivision (1) above must deny a joinder for trial or grant a severance of defendants whenever:

a. If before trial, it is found necessary to protect a defendant's right to a speedy trial, or it is found necessary to promote a fair determination of the guilt or innocence of one or more defendants; or

b. If during trial, upon motion of the defendant whose trial is to be severed, or motion of the prosecutor with the consent of the defendant whose trial is to be severed, it is found necessary to achieve a fair determination of the guilt or innocence of that defendant.

G.S. § 15A-927(c) (1999). This statute substantially codifies the decision of *Bruton v. U.S.*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968).

Here, defendant claims that his statement, redacted pursuant to G.S. § 15A-927(c)(1)(b), was inadequate to meet the constitutional and statutory requirements. According to defendant, the omissions from his statement distorted his statement and unfairly magnified his participation in the crimes. Specifically defendant objects to the omission that he was not in the car at Hardee World while Brewington and Lee talked. He also objects to the deletion of his comment that "we were just messing around laughing and stuff" and that there was only one discussion of the murders. Further, defendant argues that the statement should not have excluded his comment that "at first we were going to take [Brian] swimming."

In these arguments, defendant ignores the State's evidence that he had conversations with Lee about killing Patrick and Brian, that he accompanied Lee to Fayetteville to kill Patrick and that he actively participated in the murders. Additionally, defendant made the swimming comment during a discussion of how to murder the victims. Accordingly, the redaction of these statements did not prejudice the defendant. Indeed, their inclusion would have actually strengthened the State's case.

[3] Next, defendant argues that the trial court committed reversible error by failing to instruct the jury that it could use defendant Brewington's statement against Brewington only. In the recent case of *State v. Brewington*, 352 N.C. 489, 532 S.E.2d 496 (2000), our

Supreme Court held that it is not proper to determine whether the introduction of a co-defendant's statements violated defendant's rights under the Confrontation Clause unless we first conclude that the co-defendant's statement implicated the defendant. Here, we hold that the State redacted Brewington's confession carefully and that it retained a "natural narrative flow." *Brewington*, 352 N.C. at 512, 532 S.E.2d at 510. Additionally, there are no indications that the State altered the confession. *Id.* Accordingly, we hold that the defendant was not incriminated by Brewington's confession, and the trial court's failure to give a limiting instruction was not prejudicial error. However, even if the trial court's failure to instruct was error, we hold that any error was harmless beyond a reasonable doubt. *Roope*, 130 N.C. App. at 367, 503 S.E.2d at 126 (citations omitted). The State presented overwhelming evidence of the defendant's guilt including his own confession. Accordingly, although the better practice would be to include a limiting instruction, the alleged error does not require a new trial. *Id.*

We hold that defendant's remaining assignments of error as to joinder have no merit.

### III. First Degree Burglary

[4] Defendant next challenges the trial court's failure to give an instruction on the definition of nighttime.

Our Courts have held that "the constituent elements of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein." *State v. Surcey*, 139 N.C. App. 432, 434, 533 S.E.2d 479, 481 (2000). *See* N.C.G.S. § 14-51 (1999). North Carolina provides no statutory definition of nighttime. However, our courts "adhere to the common law definition of nighttime as that time after sunset and before sunrise 'when it is so dark that a man's face cannot be identified except by artificial light or moonlight.'" *State v. Barnett*, 113 N.C. App. 69, 74, 437 S.E.2d 711, 714 (1993) (quoting *State v. Ledford*, 315 N.C. 599, 607, 340 S.E.2d 309, 315 (1986)). Under the North Carolina Pattern Jury Instructions, the trial judge must instruct the jury on the definition of nighttime, "**if there is doubt as to whether it was nighttime.**" N.C.P.I., Crim. 214.10 fn. 3 (emphasis added).

We begin by taking judicial notice that on 12 June 1997, in Harnett County, that civil twilight began at 5:29 a.m. and the sun rose at 5:59

a.m. See Sun and Moon Data for Dunn, Harnett County, North Carolina computed by the Astronomical Applications Department U.S. Naval Observatory; *Barnett*, 113 N.C. App. at 75, 437 S.E.2d at 714. The evidence showed that during the night, defendant and Lee rode by Brewington's house honking the horn. The honking roused Brewington from sleep and the three met at Hardee World later. After the meeting, defendant and Lee went back to the Brewington home and committed the murders. An officer saw smoke rolling out of the house at 6:15 a.m. and had his dispatcher call the Fire Department.

Greg Maitland testified that a noise aroused him at 4:00 a.m. He saw nothing out of the ordinary and testified that Robby Brewington's car was at the house across the street. Lena Edwards testified that she drove by the Brewington house at 4:45 a.m. and saw an unfamiliar dark car parked behind the house. However, evidence obtained from Winn-Dixie showed that two gallon water jugs were purchased at 4:49 a.m. The cashier from Winn-Dixie testified that these were the only water jugs the store had sold between 2 and 5 a.m. on the day in question. Therefore, defendant contends that this evidence shows defendant and Lee must have purchased those jugs at 4:49 a.m. and creates a conflict with the testimony of Ms. Edwards. Since defendant could not have been in two places at once, defendant argues that the break-in could have occurred after Ms. Edwards saw the strange car at the Brewington house and the jury could have concluded that the break-in did not occur during the nighttime.

We agree and hold that the defendant presented sufficient evidence entitling him to an instruction on the definition of nighttime. Evidence at trial showed that the defendant and Lee drove around the Brewington house before even going to Winn-Dixie and could have been seen while merely riding by the Brewington home. The evidence went on to show that defendant and Lee did not enter the house until after they had purchased jugs at Winn-Dixie, filled them with gas and then met with Brewington at Hardee World. The State's only witness testified that she saw a strange car at the same time that the water jugs were being purchased at Winn-Dixie. According to the State's argument, Ms. Edwards saw the defendant's car at the time of the break-in and not while the defendant was simply riding by the house. The only other evidence that the State presented as to the time of the break-in was Officer Edwards who saw smoke at 6:15 a.m. By that time, nighttime had ended.

We hold that this conflicting evidence is sufficient to create a jury issue as to whether defendant broke and entered the Brewington

house during the nighttime. Since the trial court failed to give the requested instruction, defendant is entitled to have his conviction for first degree burglary reversed and a new trial ordered on the first degree burglary charge.

[5] Finally, we note that one of the grounds for defendant's two first degree murder convictions was first degree burglary under the felony murder rule. However, our disposition of defendant's burglary conviction does not affect those convictions. The jury found the defendant guilty of first degree murder on three alternative grounds. In addition to the burglary charge the jury based its convictions on premeditation and deliberation and the felony murder rule with the underlying felony of first degree arson. Since either of those grounds would be sufficient on their own, we hold that the defendant's two convictions for first degree murder must stand.

## IV. Jury Selection

[6] Defendant claims that the trial court erred by allowing the State to use peremptory challenges to exclude eight African-American potential jurors for racial discriminatory reasons. Both the U.S. and North Carolina Constitutions bar the use of peremptory challenges solely on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986); *State v. Smith*, 351 N.C. 251, 262, 524 S.E.2d 28, 37 (2000). In *Batson*, the Supreme Court established a three-part test to determine if a prosecutor has engaged in racial discrimination in the selection of jurors. *State v. Braxton*, 352 N.C. 158, 179, 531 S.E.2d 428, 440 (2000). First, defendant must establish a *prima facie* case that a peremptory challenge was exercised on the basis of race. *Smith*, 351 N.C. at 262, 524 S.E.2d at 37. If the defendant fulfills that threshold requirement, the burden shifts to the prosecutor to offer a racially neutral explanation to rebut defendant's *prima facie* case. *Id.* The trial court must then determine whether defendant has proved purposeful discrimination. *Id.*

Here, the trial court concluded that the defendant did not establish a *prima facie* case of discrimination. Therefore, our review is limited to whether the trial court erred in finding that the defendant failed to make a *prima facie* showing. *Id.*

Our Supreme Court has described the factors to be considered in the evaluation of whether defendant established a *prima facie* case. *Braxton*, 352 N.C. at 180, 531 S.E.2d at 441. Among the relevant factors is whether the prosecutor used a disproportionate number of

peremptory challenges to strike African-American jurors. *Id.* The court may also consider the prosecutor's questions and statements made during jury selection. *Id* at 180-81, 531 S.E.2d at 441. Finally, the Court may look at the race of the defendant, victims and witnesses. *Id.*

Here, the defendant has alleged nothing but conclusory allegations of discriminatory conduct. He has not cited this Court to any place in the record where we may interpret the prosecutor's comments as discriminatory. Further, defendant has not argued that the prosecutor struck a disproportionate number of African-American jurors. Simply put, the defendant's argument is that the prosecutor struck eight African-American jurors and therefore acted with impermissible racial intent. We hold that these conclusory allegations without more do not state a *prima facie* case.

## V. Discovery

[7] Defendant also assigns error to the trial court's denial of his request for information and data related to testing performed by the SBI and for copies of the State's photographs. In his brief, defendant concedes that our Supreme Court has held that the State does not have to furnish a defendant with copies of photographs. *State v. James*, 321 N.C. 676, 685, 365 S.E.2d 579, 585 (1988). Instead, G.S. § 15A-903(d) (1999) requires only that the State make the photographs available to the defendant for inspection and copying. Here, the defendant can point to nothing in the record to support his assertion that the State failed to comply with the statute. Accordingly, this assignment of error is overruled.

Additionally, defendant sought information concerning the SBI lab results. Specifically, defendant asked for the State to identify the names of all machines used, the standards in testing, any containers used to transport the samples, and the procedures used in transporting these containers. Additionally, defendant requested that the State produce copies of chromatograms.

Under G.S. § 15A-903(e) (1999),

the court must order the prosecutor to provide a copy of or to permit the defendant to inspect and copy or photograph results or reports of physical or mental examinations or of tests, measurements or experiments made in connection with the case or copies thereof within the possession, custody, or control of the State.

We decline to address whether the defendant was entitled to the requested information because we hold that any error was harmless beyond a reasonable doubt. *State v. Cunningham*, 108 N.C. App. 185, 423 S.E.2d 802 (1992). Here, the SBI reports in question revealed the presence of gasoline on most of the items tested. The State's evidence at trial showed that the defendant confessed that he and Lee doused the beds in gasoline that they purchased earlier in the evening. Additionally, officers testified that they found a one-half full jug of gas on a chair in the house and firefighters testified that the bedroom smelled of gasoline. Defendant cannot in good faith question the presence of gasoline here. Further, because the evidence of defendant's guilt is overwhelming, we overrule the assignment of error as harmless.

## VI. Prosecutor's Closing Argument

[8] Next, defendant assigns error to the propriety of the prosecutor's closing argument. Defendant claims that the prosecutor's comments impugn the defendant, defense counsel and the judicial process in a manner that requires a new trial. The following exchange took place during the prosecutor's closing argument.

> And counsel for the defendant Brewington attempts to cast doubt upon the defendant's confession because they know that that [sic] confession sinks their client just as surely as an iceberg sunk the Titanic. That's why Mr. Gilchrist yesterday spent almost his entire argument attacking this confession.

> You know, one of my political heroes was the late Senator Sam Ervin. Before he became a [S]enator, Sam Ervin was renowned across this state as a great trial lawyer, and he once said, when talking about defending a guilty client in a criminal case, that if the facts are against you—

Mr. Bain: Objection.

The Court: Overruled.

Mr. Lock: —argue the law. And if the law is against you well then you talk about the facts, and if both the facts and the law are against you, well then you pound on the lectern and you talk about the Constitution and you just argue like hell.

Yesterday, Mr. Gilchrist did a whole lot of arguing, and he even talked a little bit about the Constitution, but he did not shake the confession of Robby Brewington.

"It is well settled that arguments of counsel rest within the control and discretion of the presiding trial judge." *State v. Worthy*, 341 N.C. 707, 709, 462 S.E.2d 482, 483 (1995). Our courts have granted counsel wide latitude in hotly contested cases. *Id.* On a number of occasions, our Supreme Court has stated that,

> "for an inappropriate prosecutorial comment to justify a new trial, it 'must be sufficiently grave that it is prejudicial error.'" In order to reach the level of "prejudicial error" in this regard it now is well established that the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

*Id.* at 709-10, 462 S.E.2d at 483 (citations omitted). In analyzing a prosecutor's comments, we do not examine them in a vacuum. *Id.* at 710, 462 S.E.2d at 483. Rather, this Court must view the remarks in the context in which the prosecutor made them. *Id.*

Here, we cannot hold that the prosecutor's comments, while arguably inappropriate, "so infected the trial with unfairness as to make the conviction a denial of due process." *Id.* First, the district attorney made his argument in direct response to counsel for Brewington's argument that Brewington's confession resulted from unconstitutional police conduct. Further, this is not a case in which the prosecutor has made a degrading comment about the defendant or his counsel. *See State v. Davis*, 45 N.C. App. 113, 262 S.E.2d 329 (1980). Finally, we note that the prosecutor's comments were explicitly directed as a response to counsel for Brewington and not the defendant's counsel. Therefore, the prosecutor did not even relate these arguments to this defendant. While we do not approve of the prosecutor's comments, we hold that on these facts they did not deny the defendant a fair trial.

## VII. Transcript Request

[9] Next, defendant alleges that the trial court's failure to issue him a transcript of the 24 July motion to suppress hearing was error and violated his constitutional rights. While the better practice would have been to order a transcript, our review does not disclose any prejudicial error. Under *Britt v. North Carolina*, 404 U.S. 226, 30 L. Ed. 2d 400 (1971), the U.S. Supreme Court stated that a trial court does not always have to provide an indigent defendant with a transcript of a prior proceeding. Instead, availability is determined by looking at (1) whether the transcript was necessary for preparing an

effective defense and (2) whether there are alternative devices available to the defendant. *State v. Rankin*, 306 N.C. 712, 716, 295 S.E.2d 416, 418-19 (1982). Here, the hearing on the motion to suppress took place approximately one week before trial. Defendant had the same counsel for the hearing and trial and the same judge presided. Further, both counsel and the defendant were present for both proceedings. Finally, our review of the transcripts shows that the testimony was substantially the same. Under these circumstances we hold that the trial court's failure to order a transcript of the suppression hearing was not prejudicial error warranting a new trial.

## VIII. Jury Instructions

**[10]** Next, defendant contends that the trial court made several prejudicial errors in its jury instructions. We disagree. First, defendant argues that the court's instructions on accessory before the fact with respect to co-defendant Brewington prejudice the defendant. The trial court gave substantially the following instruction as to accessory before the fact on every offense charged,

> [i]f you find from the evidence beyond a reasonable doubt that on or about the date alleged that the defendant Henry Michael McKeithan acting by himself or acting together with Vera Sue Lee . . . and that before the crime was committed the Defendant Robert Brewington counseled, procured, commanded, knowingly aided McKeithan and Lee to commit the crime and in so doing Robert Brewington's actions or statements caused or contributed to the commission of the crime . . . and that the defendant Robert Brewington was not present when the crime was committed your duty would be to return a verdict of guilty.

Defendant claims that this instruction permitted the jury to conclude that it could convict Brewington only if it had first convicted McKeithan of the underlying crime.

In order to convict Brewington of accessory before the fact, the State had to show:

(1) [Brewington] must have counseled, procured, commanded, encouraged, or aided the principal to murder the victim;

(2) the principal must have murdered the victim; and

(3) [Brewington] must not have been present when the murder was committed.

*State v. Davis*, 319 N.C. 620, 624, 356 S.E.2d 340, 342 (1987). If the principal is acquitted then the accessory is also acquitted. *State v. Suites*, 109 N.C. App. 373, 427 S.E.2d 318, *disc. review denied*, 333 N.C. 794, 431 S.E.2d 29 (1993). Here, the State presented overwhelming evidence of defendant's guilt. Therefore, the trial court did not commit prejudicial error by reading defendant's name in the accessory charge involving Brewington.

**[11]** Next, defendant objects to the definition that the trial court gave for "deadly weapon." The court started its instruction by giving verbatim N.C.P.I., Crim. 206.14 for the definition of deadly weapon. The court then added that "you may consider the size of the knife and its use thereof. You may also consider the pouring of gasoline into an occupied dwelling house and the ignition thereof." Defendant also assigns error to the trial court's instruction on premeditation and deliberation. In this instruction, the trial court made the following statement, "[p]remeditation and deliberation may be proved by a group of circumstances from which they may be inferred; circumstances such as . . . infliction of lethal wounds." N.C.P.I., Crim. 206.14 states that premeditation and deliberation may be proved by circumstances such as the "infliction of lethal wounds after the victim was felled." Defendant argues that the elimination of "after the victim was felled" amounts to error requiring a new trial.

Our Supreme Court has held that we must construe a trial court's charge to the jury in context. *State v. Boykin*, 310 N.C. 118, 125, 310 S.E.2d 315, 319 (1984). We will not hold the charge to be prejudicial error where it is correct as a whole. *Id.* "Where the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous affords no grounds for reversal." *State v. Jones*, 294 N.C. 642, 653, 243 S.E.2d 118, 125 (1978). Here, we hold that the jury charge as a whole is correct and the errors and omissions pointed out by the defendant were not prejudicial.

## IX. Conspiracy

**[12]** Defendant argues that the trial court erred by entering judgment on two counts of conspiracy to commit murder when the jury only returned one guilty verdict as to conspiracy. The State concedes that this Court should return this case to the trial court to arrest judgment on one conspiracy count. We agree that the trial court erred in this respect and remand the case to the trial court to arrest judgment as to one of the counts of conspiracy and to reverse the burglary verdict and remand the burglary charge for a new trial.

Case Number 97CRS7216 First Degree Murder no error.

Case Number 97CRS7217 First Degree Murder no error.

Case Number 97CRS7218 First Degree Arson no error.

Case Number 97CRS7219 Conspiracy to Commit Murder no error.

Case Number 97CRS7220 Conspiracy to Commit Murder judgment arrested.

Case Number 97CRS7221 First Degree Burglary new trial.

Reversed and remanded in part, no error in part.

Judges MARTIN and HORTON concur.