IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-351

No. COA20-396

Filed 20 July 2021

Union County, No. 18 CRS 702516-17, 50734

STATE OF NORTH CAROLINA

v.

RICHARD ALAN GADDIS, JR.

Appeal by defendant from judgment entered 6 September 2019 by Judge Jeffery K. Carpenter in Union County Superior Court. Heard in the Court of Appeals 9 March 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Mary M. Maloney, for the State.*

*Jarvis John Edgerton, IV, for defendant-appellant.*

TYSON, Judge.

¶ 1 Defendant asserts the trial court abused its discretion and committed prejudicial and reversible error when it denied his motion for a continuance to produce a transcript from a prior trial. We disagree and find no error.

## I. Background

¶ 2 Defendant was charged 12 February 2018 with: (1) driving while impaired; (2) driving while his license was revoked for an impaired driving offense; (3) driving without a valid registration; and, (4) driving without a displayed license plate.

¶ 3 Defendant's actions were reported by eyewitnesses, who had called 911 to report Defendant's erratic and dangerous driving. Defendant crashed the vehicle he was driving. Multiple eyewitnesses saw Defendant behind the wheel of the vehicle with its engine running and detected a strong odor of alcohol on his person. Defendant attempted to flee from the scene of the wreck. He was caught and subdued by the civilian eyewitnesses until law enforcement officers arrived and took him into custody.

¶ 4 Defendant was initially tried 15 July 2019. This trial ended in a hung jury and a mistrial was declared. Defendant's current trial counsel was appointed immediately after his first trial on 18 July 2019. The trial court set the date for retrial for 3 September 2019. Defendant made a pretrial motion for production of the transcript from the mistrial a week prior to the scheduled retrial and a motion to continue to have sufficient time to receive the transcript. The motions were denied by the trial court.

¶ 5 At the retrial, Defendant renewed his motions and argued the denial of the motions was a violation of his due process rights. Defendant asserted he needed the transcript from the prior trial to effectively impeach and cross-examine the State's

witnesses. The transcript raises an issue concerning trial counsel's strategy to request the continuance. When asked by the trial court: "do you really want the continuance." Trial counsel responded: "I do and I don't." The trial court denied both motions and proceeded to trial.

¶ 6     Defendant called his prior counsel, Onyema Ezeh, as a witness. The State objected and asserted Defendant should have timely requested and obtained a transcript. The trial court overruled the State's objection and allowed Ezeh to take the stand and testify. *See State v. Rankin,* 306 N.C. 712, 716, 295 S.E.2d 416, 419 (1982) (When a trial court denies an indigent defendant of a transcript, it must determine "(1) whether a transcript is necessary for the preparation of an effective defense and (2) whether there are alternative devices available to the defendant which are substantially equivalent to a transcript.").

¶ 7     The jury's verdict found Defendant guilty of all charges. The trial court entered judgments on driving while impaired and driving while his license was revoked for an impaired driving offense, but arrested judgment on the remaining two charges of no registration or license plate. Defendant timely appealed.

## II.     Jurisdiction

¶ 8     This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2019).

## III.     Standard of Review

¶ 9       "[A] motion to continue is addressed to the discretion of the trial court, and *absent a gross abuse of that discretion*, the trial court's ruling is not subject to review." *State v. Taylor*, 354 N.C. 28, 33, 550 S.E.2d 141, 146 (2001) (citation omitted) (emphasis supplied). Denial of a motion to continue is grounds for a new trial *only if* the defendant shows the denial was erroneous *and* he suffered prejudice due to the error. *Id.*

¶ 10      To establish prejudice, the defendant carries the burden and must show he did not have time to confer with counsel, and to investigate, prepare, and present his defense. *State v. Williams*, 355 N.C. 501, 540-41, 565 S.E.2d 609, 632 (2002) (citations omitted).

## IV.    Analysis

¶ 11      The State asserts Defendant's appointed counsel "waited until about a week before this trial was [scheduled] to happen to request a transcript." The State argues counsel was dilatory and used the motions to delay the trial from the prior established and known date. The State also argues Defendant has failed to show any prejudice occurred because prior counsel's testimony at the retrial was substantially similar to Defendant's dilatory request for the transcript a week before trial. The State reasons Ezeh's testimony may have been even more beneficial to Defendant than the prior trial transcript would have been.

Prior counsel called into question the eyewitnesses Porcello's and Daniel's truthfulness and accuracy. Alternatively, Defendant could have also subpoenaed the court reporter to review the tapes and read any of Porcello's and Daniel's prior and disputed testimony at trial, but he failed to do so. The State asserts it was unable to effectively impeach Ezeh's testimony because of the lack of transcript.

Defendant's appellate counsel argues trial counsel's dilatory request, Defendant's lack of the transcript, and the trial court's discretionary ruling to deny comprise a "constitutional violation." This assertion is nothing more than like a puffer fish, attempting to "blow up" Defendant's lack of a transcript. Defendant purports to shift the denial of Defendant's week-before-retrial motions for the transcript and continue the trial to the State with the burden to show such "error" was harmless beyond a reasonable doubt. This notion is unsupported by precedents.

Counsel's argument is more accurately described as a desiccated sardine, consciously canned by his trial counsel. Defense counsel's delay and inaction brought this notion of a "constitutional crisis" upon himself. Any purported remedy may well be asserted in an IAC claim against trial counsel, as opposed to puffing up and asserting blame on the trial court or the State for Defendant's lack of the transcript from the prior trial.

The State asserts this Court's opinion in *State v. McKeithan*, 140 N.C. App. 422, 437 537 S.E.2d 526, 536 (2000) supports their argument no prejudicial error

occurred from the trial court failing to postpone the trial and allow Defendant to secure the transcript. In *McKeithan*, this Court held a trial court does not have to provide a transcript of a prior proceeding when counsel and the defendant were present at both proceedings and the testimony was substantially the same at both proceedings. *Id.* at 430, 537 S.E.2d at 536.

¶ 16          Here, as in *McKeithan*, Defendant was present for both proceedings and Ezeh testified at the second proceeding with new counsel appointed. Any purported error may be invited error if the motion was asserted a week prior to trial as a strategy and excuse to continue and delay the retrial. *Id.*

## V.     Conclusion

¶ 17          Even if not invited error, counsel's dilatory request for the transcript while knowing well in advance the retrial date deflates any prejudice argument, does not shift any burden onto the State of a purported "constitutional violation," and does not show any abuse of discretion by the trial court. Defendant received a fair trial, free from prejudicial errors he preserved and argues. We find no error in the jury's verdicts or in the judgments entered therein. *It is so ordered.*

NO ERROR.

Judge GORE concurs.

Judge MURPHY dissents with separate opinion.

No. COA20-396 – *State v. Gaddis*

MURPHY, Judge, dissenting.

The Majority fails to engage with many of the arguments and cases relied upon by Defendant. In light of this failure and the reasons stated below, I dissent.

A trial court errs when it denies an indigent defendant's motion for a continuance to produce a prior proceeding's transcript without finding "[A] whether a transcript is necessary for preparing an effective defense and [B] whether there are alternative devices available to the defendant which are substantially equivalent to a transcript." *State v. Rankin*, 306 N.C. 712, 716, 295 S.E.2d 416, 419 (1982) (citing *Britt v. North Carolina*, 404 U.S. 226, 30 L. Ed. 2d 400 (1971)). Here, the denial of Defendant's motions for a continuance to produce the transcript from his mistrial was error due to the lack of findings regarding whether the transcript was necessary for Defendant's defense and whether there was an alternative device available to Defendant that was substantially equivalent to the transcript from his mistrial.

The denial of Defendant's motions also occurred without evidence that Defendant had no need for a transcript from his mistrial or that a substantially equivalent alternative was available to him. *See State v. Reid*, 312 N.C. 322, 323, 321 S.E.2d 880, 881 (1984) (per curiam).

## BACKGROUND

¶ 21        Defendant Richard Gaddis, Jr., was charged with driving while impaired, driving while his license was revoked, driving without a valid registration, and driving without a displayed license plate. He was first tried on 15 July 2019, but the trial court declared a mistrial after the jury failed to reach a unanimous verdict. The trial court set retrial for 3 September 2019, and new counsel was appointed for Defendant. The 15 July 2019 and 3 September 2019 trials occurred before different judges.

¶ 22        In preparation for the retrial, Defendant made a pretrial motion for production of the mistrial transcript[1] and a motion to continue to have sufficient time to receive the mistrial transcript.[2] The motions were denied without any findings.

¶ 23        At the retrial, Defendant renewed his motions, arguing the denial of the motions would be a violation of his due process rights. Specifically, Defendant requested the transcript to effectively impeach and cross-examine the State's witnesses. Defendant's renewed motions were denied after the trial court found Defendant had "three prior attorneys" appointed to represent him before current Defense Counsel.

---

[1] This is the proper method to acquire the transcript from a prior proceeding for an indigent defendant. *See Rankin*, 306 N.C. at 715, 295 S.E.2d at 418 (citing *Britt*, 404 U.S. 226, 30 L. Ed. 2d 400).

[2] Although Defendant made one pretrial motion, the trial court treated the motion as a motion for a transcript and a motion for a continuance, and denied both.

¶ 24        At the retrial, the State's witness Bryan Porcello testified he was driving with his family at night when he noticed a vehicle swerving and going through red stoplights. While following the vehicle, Porcello's wife called law enforcement and Porcello observed the vehicle veer off the road and get stuck. Porcello initially drove past the stuck vehicle, then turned around, noticed the vehicle was unstuck and continuing down the road again, and began following the vehicle again.

¶ 25        Porcello testified he saw "[a] white male" driving the vehicle, and "didn't see anyone else." After following the vehicle for some time, Porcello saw the vehicle veer off the road again, try to correct, but instead "[shoot] across both lanes and wreck[] into a ditch." Porcello then went to see whether the driver was injured but could not see into the vehicle. Porcello flagged down another vehicle for help while watching the wrecked vehicle to see whether the driver would emerge.

¶ 26        The driver of the flagged down vehicle, David Daniel, testified "[a]s I pulled up I saw [Defendant] in the driver's seat. My headlights shined right on him." Porcello and Daniel approached the vehicle with a flashlight and saw Defendant sitting in the driver seat of the vehicle alone. Daniel testified the vehicle was still running and Defendant's foot "was on the accelerator." Defendant appeared disoriented and was asking "where a girl was." Defendant exited the vehicle and walked toward a nearby neighborhood while Daniel and Porcello followed. Porcello eventually subdued Defendant and waited for law enforcement to arrive on scene. Porcello recalled

talking with law enforcement but did not make a written statement regarding the incident. Daniel made a written statement for law enforcement regarding the incident, which was read at trial.

¶ 27 During cross-examination, Defendant attempted to impeach Porcello and Daniel based on their prior testimony at the mistrial with notes from the mistrial Defense Counsel, Onyema Ezeh. At the conclusion of Daniel's testimony, Defendant notified the trial court of his intention to add Ezeh to his "witness list for impeachment purposes." After presenting its evidence, the State objected to Ezeh testifying:

> [THE STATE]: . . . . Based on the Rule 403 grounds that any testimony that he gives is just confusion of the issues and a reiteration of what's already been said in this trial. [Current Defense Counsel] could have -- there are multiple ways to be able to impeach a witness. He could have chosen to cross examine the witnesses on these issues.
>
> THE COURT: He did. He did cross examine them on the issue.
>
> [THE STATE]: And that now he's trying to use a different way and a former attorney to come in and when there are other ways to cross examine. And again that creates a host of issues in confusing the jury in this case and again he could have received a transcript which would have been a much more clear understanding.
>
> THE COURT: Well, he tried to do that but you all wanted to try the case so I told him he couldn't have it. He wanted a copy of the transcript but because of the case being a misdemeanor appeal and you all wanting to try it, his

motion for the transcript was denied.

[THE STATE]: And your Honor --

THE COURT: So he attempted to go that route.

[THE STATE]: I would also -- I mean, just for the record is that [current Defense Counsel] was appointed on this case on [18 July 2019], the day that [Defendant] -- the trial hung and that Mr. Ezeh withdrew and [current Defense Counsel] knew from other attorneys and myself that he was appointed that day and he waited until about a week before this trial was to happen to request a transcript.

¶ 28 Following the State's objection, the trial court allowed Ezeh to testify. Ezeh testified to certain discrepancies in Porcello's testimony. Specifically, Ezeh noted at the mistrial "[Porcello] was unable to tell [him] if [the driver] [was] black, white, male, female, race, nothing[,]" and "Porcello did not testify in the previous trial that [Defendant] was the driver of that vehicle." On cross-examination, the State questioned and impeached Ezeh's knowledge and recollection of the prior trial testimony, while also attacking his credibility:

> [THE STATE:] Mr. Ezeh, you're basing your testimony today on testimony you heard back in July?
>
> [EZEH:] Yes. From the testimony I heard back in July and from my notes, my closing statements and my mind's eye, my memory.
>
> [THE STATE:] And you can't say word for word what a witness said in that previous trial?
>
> [EZEH:] I cannot say word for word what a witness may have said but I do remember exactly what Mr. Porcello said

with regards to not being able to identify [Defendant] as the driver of the vehicle. I remember that vividly.

[THE STATE:] And you can't say word for word any of the questions that were asked in that previous trial?

[EZEH:] I remember some of the questions I had asked Mr. Porcello at the previous trial, I remember some of the questions I asked him.

[THE STATE:] But you still can't say word for word exactly what those were?

[EZEH:] I cannot use the exact same verbiage I used when I asked the question . . . .

[THE STATE:] And you haven't seen a transcript of the previous trial?

[EZEH:] No. I have not seen a transcript of the previous trial, no.

. . . .

[THE STATE:] Are you relying on your memory of that?

[EZEH:] . . . . I'm relying on everything that I remember from that trial, Mr. Porcello never said that.

[THE STATE:] And your notes and everything, those notes aren't actual trial transcripts in this case; correct?

[EZEH:] Those were notes that I used from the answers that were given to me during the trial based on questions[] . . . I had asked . . . at different times during the trial.

[THE STATE:] Again, it's been two months since this prior testimony happened. Your recollection is not fresh in this case; correct?

[EZEH:] It's been two months since it happened but I

> reviewed my notes from the trial, I have reviewed my
> closing statements . . . . So I'm giving you information that
> has been reviewed by myself.
>
> . . . .
>
> [THE STATE:] Mr. Ezeh, isn't it true your view of the
> testimony is biased from the first trial because you were
> interested in the outcome?
>
> [EZEH:] That's not true.
>
> [THE STATE:] And your view is still biased when
> recounting exactly what happened in that outcome.

¶ 29    The State also attacked Ezeh's credibility in closing arguments:

> [THE STATE:] You heard from Mr. Ezeh in this case, who
> was [Defendant's] lawyer at a previous trial, at a previous
> proceeding. You heard that he's an interested party in this
> case. He is interested in the outcome of this case. . . .
> [Current Defense Counsel] said that the witnesses are
> trying to convict [Defendant] without seeing anything.
> When in fact [current Defense Counsel] and Mr. Ezeh are
> trying to get [Defendant] out of criminal consequences by
> testimony that they provided when they actually haven't
> seen anything.

¶ 30    A jury found Defendant guilty of driving while impaired, driving while his

license was revoked impaired revocation, driving without a valid registration, and

driving without a displayed license plate.

¶ 31    Defendant appeals the trial court's denial of his motions to continue and to

produce the transcript from the mistrial, arguing the lack of a determination

regarding whether the transcript was necessary for the preparation of an effective

defense, and whether there was a substantially equivalent alternative device available to Defendant was error.

## ANALYSIS

¶ 32    "Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *State v. Taylor*, 354 N.C. 28, 33, 550 S.E.2d 141, 146 (2001), *cert. denied*, 535 U.S. 934, 152 L. Ed. 2d 221 (2002).  However,

> [w]hen a motion to continue raises a constitutional issue, the trial court's ruling is fully reviewable upon appeal. Even if the motion raises a constitutional issue, a denial of a motion to continue is grounds for a new trial only when [the] defendant shows both that the denial was erroneous and that he suffered prejudice as a result of the error.

*State v. Jones*, 172 N.C. App. 308, 312, 616 S.E.2d 15, 18 (2005).  "The issue presented here is one of law because the State must, as a matter of equal protection, provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." *State v. Wells*, 73 N.C. App. 329, 330, 326 S.E.2d 129, 131 (1985).

¶ 33    When determining whether an indigent defendant shall be entitled to secure a transcript of a prior proceeding, the trial court

> examines [A] whether a transcript is necessary for preparing an effective defense and [B] whether there are alternative devices available to the defendant which are substantially equivalent to a transcript.  *If the trial court*

> *finds* there is either no need of a transcript for an effective defense or there is an available alternative which is 'substantially equivalent' to a transcript, one need not be provided and denial of such a request would not be prejudicial.

*Rankin*, 306 N.C. at 716, 295 S.E.2d at 419 (emphasis added) (citation omitted) (quoting *Britt*, 404 U.S. at 230, 30 L. Ed. 2d at 405); *see also Reid*, 312 N.C. at 323, 321 S.E.2d at 881 (granting a new trial when the "[trial] court denied [the] defendant's motion without evidence or findings that [the] defendant had no need for a transcript or that there was available to [the] defendant a substantially equivalent alternative").

**A. Findings Regarding Transcript Request Denial**

¶ 34        The facts here are similar to *State v. Tyson*, where the trial court declared a mistrial due to a deadlocked jury and set a retrial for the next day. *State v. Tyson*, 220 N.C. App. 517, 518, 725 S.E.2d 97, 98 (2012). In *Tyson*, the defendant objected to the immediate retrial and requested the transcript from the prior trial. *Id.* The trial court denied the defendant's request, stating, "the anticipation or the speculation that a witness may get on the stand and alter their testimony" was an insufficient basis to continue trial and allow for the production of a transcript. *Id.* at 519, 725 S.E.2d at 99. The next day, the defendant renewed his request for the transcript, and the trial court denied it after finding "there are means [the trial court]

can take to ensure that the defendant's due process rights are protected." *Id.* We

applied the *Rankin* two-part test and held the trial court's findings were insufficient:

> [The] [d]efendant, in this case, argued he needed the transcript to effectively cross-examine the State's witnesses . . . . The trial court's ruling in this case that [the] defendant's asserted need constituted mere speculation that a witness might change his or her testimony would apply in almost every case. A defendant would rarely if ever be able to show that the State's witnesses would in fact change their testimony. The trial court's ruling makes no determination why, in this particular case, [the] defendant had no need for a transcript, especially in light of the fact that the State's case rested entirely on the victim's identification of [the] defendant as the perpetrator. . . . Accordingly, [the] defendant is entitled to a new trial.

*Id.* at 519-20, 725 S.E.2d at 99 (citation omitted); *see also Wells*, 73 N.C. App. at 330-

31, 326 S.E.2d at 131 (citation omitted) (holding "the [trial court's] ruling denying

[the] defendant a continuance without the findings required by our Supreme Court

in *Rankin* was a violation of [the] defendant's equal protection rights under the

Fourteenth Amendment to the [United States] Constitution").[3]

---

[3] The Majority does not engage with the key issue in this appeal–the lack of findings, required by *Rankin*, in the trial court's denial of Defendant's motions for a transcript and to continue. Further, the Majority's contention that the trial court's denial of Defendant's motions for a transcript and to continue was not a potential constitutional violation is not consistent with *Wells*, *Tyson*, or *Rankin*. *Supra* at ¶¶ 13-14. The denial without the findings required by *Rankin* violated Defendant's equal protection rights. *See Wells*, 73 N.C. App. at 330-31, 326 S.E.2d at 131.

¶ 35        Here, like the defendant in *Tyson*, Defendant requested the transcript of the mistrial to effectively impeach and cross-examine the State's witnesses. Further, like the victim's identification of the defendant in *Tyson*, much of the State's case rested on whether Porcello and Daniel witnessed Defendant driving. The trial court's pretrial denial of Defendant's motion for production of the mistrial transcript and motion to continue to have sufficient time to receive the mistrial transcript did not contain a finding regarding whether the transcript was necessary to prepare an effective defense, or whether there was an alternative device available to Defendant that was substantially equivalent to a transcript. Specifically, the oral order denying Defendant's pretrial motions did not contain any of the required findings.

¶ 36        Similar to the trial court's denial of the defendant's renewed request in *Tyson*, at trial, Defendant's renewed motions for a continuance and production of the mistrial transcript were denied after a finding Defendant had "three prior attorneys" appointed to him. Regarding the denial of Defendant's renewed motions at retrial, the Record on appeal shows no findings were made regarding whether the transcript was necessary for Defendant's preparation of an effective defense, or whether an alternative device substantially equivalent to the transcript was available to Defendant. Accordingly, the denial of Defendant's motion to continue and for production of the mistrial transcript was made without sufficient *findings* that Defendant had no need for a transcript or that a substantially equivalent alternative

was available to him. *See Reid*, 312 N.C. at 323, 321 S.E.2d at 881 (emphasis added) (granting a new trial where "the [trial] court denied [the] defendant's motion without *evidence* or *findings* that [the] defendant had no need for a transcript or that there was available to [the] defendant a substantially equivalent alternative").

¶ 37        Although our courts have not conducted an explicit prejudice analysis in these instances, we have treated the lack of findings as prejudicial error. *See Tyson*, 220 N.C. App. at 518, 725 S.E.2d at 98 (remanding for a new trial where insufficient findings were made); *Rankin*, 306 N.C. at 715-16, 295 S.E.2d at 418-19.

**B. Evidence of a Substantially Equivalent Alternative**

¶ 38        We also must evaluate whether the denial of Defendant's motions was made without *evidence* that Defendant had no need for a transcript or that a substantially equivalent alternative was available to him. *See Reid*, 312 N.C. at 323, 321 S.E.2d at 881. Relevant to this issue, the State argues the trial court did not err, despite the lack of findings required in *Rankin* at the time of the motions' denials, because at trial it allowed testimony from Defendant's former attorney, Ezeh, which provided an alternative device that was substantially equivalent to a transcript. Assuming, *arguendo*, that we should consider later evidence during trial in our review of the pretrial motions, I still disagree.

¶ 39        "[T]he State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available

*MURPHY, J., dissenting.*

for a price to other prisoners." *Britt*, 404 U.S. at 227, 30 L. Ed. 2d at 403.  In *Britt*,

the Supreme Court of the United States held the trial court appropriately denied the

provision of a requested transcript when an informal, substantially equivalent

alternative was available to the indigent defendant.  *Id.* at 230, 30 L. Ed. 2d at 405.

In *Britt*,

> [t]he second trial was before the same judge, with the same counsel and the same court reporter, and the two trials were only a month apart. . . . [The] petitioner could have called the court reporter *to read to the jury the testimony given at the mistrial*, in the event that inconsistent testimony was offered at the second trial.
>
> . . . . The trials of this case took place in a small town where, according to [the] petitioner's counsel, the court reporter was a good friend of all the local lawyers[,] was reporting the second trial[, and] . . . would at any time have read back to counsel his notes of the mistrial, well in advance of the second trial, if counsel had simply made an informal request.

*Id.* at 228-29, 30 L. Ed. 2d at 404-05 (emphasis added).[4]

---

[4] The Majority cites *State v. McKeithan*, 140 N.C. App. 422, 437, 537 S.E.2d 526, 536 (2000), *appeal dismissed and disc. rev. denied*, 353 N.C. 392, 547 S.E.2d 35 (2001), for two purported reasons, neither of which negate the findings required under *Rankin*: (A) "a trial court does not have to provide a transcript of a prior proceeding when counsel and the defendant were present at both proceedings and the testimony was substantially the same at both proceedings"; and (B) "[a]ny purported error may be invited error if [Defendant's] motion was asserted a week prior to trial as a strategy and excuse to continue and delay the retrial." *Supra* at ¶¶ 15-16.  Of note, our opinion in *McKeithan* did not analyze the required findings in *Rankin* or our opinion in *Wells*.

The first reason does not include all of the circumstances we found were important in *McKeithan*.  In *McKeithan*, we held the trial court's refusal to issue the defendant a transcript

¶ 40        Here, long after his renewed motions were denied and the State presented evidence, Defendant chose to call his former attorney, Ezeh, to testify; the State objected to Ezeh's testimony, in part because the testimony would be "confusing [to] the jury[,]" unlike "a transcript which would have been a much more clear understanding." While testifying, Ezeh provided his recollection of Porcello's testimony at the prior trial and detailed how it differed from his current testimony. However, on cross-examination, the State repeatedly impeached Ezeh's testimony as an incomplete recollection of events, including that he could not recall "word for word what a witness said in that previous trial[.]" The State continually noted Ezeh was relying simply on his trial notes and memory of Porcello's testimony, not on a verbatim trial transcript. Ezeh's impeached testimony was not a substantially

---

of a motion to suppress hearing was not prejudicial error where "the hearing on the motion to suppress took place approximately one week before trial[, the defendant] had the *same counsel* for the hearing and trial and the *same judge* presided[, and] both counsel and the defendant were present for both proceedings." *McKeithan*, 140 N.C. App. at 438, 537 S.E.2d at 536 (emphases added). As previously noted, here, Defendant had different counsel for the retrial, and different judges presided over the mistrial and the retrial. Further, the time between Defendant's mistrial and trial was more than six weeks longer than the time between the motion to suppress and trial in *McKeithan. Id.*

The second reason, potential invited error, was not discussed in our opinion in *McKeithan* and assumes improper delay by Defendant. Importantly, requesting a continuance to enable the effective cross-examination of witnesses with the transcript from a prior trial is not an improper delay, as the Majority claims, and does not support the Majority's improper delay theory. Further, the second reason does not seem to take into account Defense Counsel's claim in the *Motion to Continue* that he did not receive *Brady* disclosure material until 19 August 2019, one week before making the *Motion for Transcript* on 26 August 2019 (a full week before trial).

equivalent alternative to a trial transcript.

¶ 41      Upon this Record, the facts here are similar to *Rankin*, where "there was no alternative available to [Defendant] which was substantially equivalent to a transcript, [and Defendant] was entitled to a free transcript." *Rankin*, 306 N.C. at 717, 295 S.E.2d at 420. Defendant is entitled to a new trial.

## **CONCLUSION**

¶ 42      The denial of Defendant's motions to continue and to produce the mistrial transcript was error due to the lack of findings regarding whether the transcript was necessary for Defendant's defense and whether there was an alternative device available to Defendant that was substantially equivalent to the transcript of the prior proceeding. Even if proper for our consideration, Ezeh's testimony was not a substantially equivalent alternative to a verbatim transcript. Defendant is entitled to a new trial. For these reasons, I respectfully dissent.