STATE OF NORTH CAROLINA v. BRIAN ANTHONY REAVIS, Defendant

No. COA09-1425

(Filed 21 September 2010)

**1. Evidence— motion to suppress—constitutional grounds— first raised at trial**

Defendant's constitutional objection at trial to admission of an interview with a detective, treated as a motion to suppress, was not timely made and the assignment of error was overruled. The legal grounds upon which defendant sought the exclusion of the evidence were constitutional, so that a pretrial motion to suppress was required, but defendant did not make such a motion and the exceptions that would allow the motion for the first time at trial did not apply.

**2. Evidence— prior offenses—opened door**

The trial court did not err by admitting evidence of defendant's prior offenses during cross-examination of defendant's psychiatrist where defendant opened the door on direct examination.

**3. Burglary and Unlawful Breaking or Entering— sufficiency of evidence—nighttime**

There was sufficient evidence that an offense occurred during nighttime to support a burglary conviction, aside from conflicting testimony from the victim, where there was also evidence from the 911 tape, the victim's statement to officers, the crime scene technician at the scene, and a record from the U.S. Naval Observatory to which defendant stipulated.

**4. Burglary and Unlawful Breaking or Entering— no instruction defining nighttime—not plain error**

There was no plain error in a burglary prosecution where the trial court did not instruct the jury on the definition of nighttime. Although there was some conflicting evidence, it could not be said that the jury probably would have reached a different verdict had the instruction been given.

STATE v. REAVIS

[207 N.C. App. 218 (2010)]

**5. Constitutional Law— effective assistance of counsel— instruction not requested—different outcome improbable**

There was no ineffective assistance of counsel in not requesting an instruction on the definition of nighttime in a burglary prosecution where it was highly improbable that there would have been a different result had the instruction been given.

Appeal by defendant from judgments entered on or about 8 May 2009 by Judge Phyllis M. Gorham in Superior Court, New Hanover County. Heard in the Court of Appeals 25 March 2010.

*Attorney General Roy A. Cooper III, by Special Deputy Attorney General Jennie Wilhelm Hauser and Assistant Attorney General Phillip Reynolds, for the State.*

*Kathryn L. VandenBerg, for defendant-appellant.*

STROUD, Judge.

Defendant was convicted of first degree sex offense, first degree burglary, malicious maiming, attempted first degree rape, and common law robbery. Defendant appeals on various grounds. For the following reasons, we find no error.

## I. Background

The State's evidence showed that on 12 April 2008, Ms. Ann Smith[1] stepped outside to get her paper, and when she came back to her house "someone was helping [her] to step into [her] house. And [they] went inside fast. He locked the door and said that he only wanted [her] money, he would not hurt [her]." Ms. Smith gave defendant the money she had downstairs. Defendant took Ms. Smith upstairs, into the bedroom, where defendant "threw [her] across the bed" and began beating her and taking off her clothes. Defendant kept telling Ms. Smith that he just wanted money. Ms. Smith told defendant she was 95 years old and asked him to stop. Defendant "rubbed [his penis] all over" Ms. Smith. Defendant placed his fingers in Ms. Smith's vagina. Defendant eventually ran away. Ms. Smith suffered serious and permanent injuries during the attack, including a serious eye injury which required surgery to save her vision in one eye. Ms. Smith also has continuing pain in her neck and a decline in her hearing and balance since the attack.

---

1. A pseudonym will be used to protect the identity of the victim.

On 30 April 2008, defendant made a statement at the Wilmington Police Department to Detective Paul Verzaal after defendant had been informed of and waived his Miranda rights. On or about 5 May 2008, defendant was indicted for first degree rape, first degree kidnapping, common law robbery, first degree sex offense, first degree burglary, malicious maiming, and three aggravating factors in the commission of the other offenses. On or about 18 November 2008 and 20 April 2009, defendant gave "notice of his intent to raise the defense of insanity and his intent to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged." On or about 4 May 2009, the State dismissed the charge of first degree kidnapping. On or about 8 May 2009, defendant was convicted by a jury of attempted first degree rape, common law robbery, first degree sex offense, first degree burglary, and malicious maiming. Defendant had a prior felony record level of V. Defendant was sentenced to 433 to 529 months for his first degree sex offense conviction, 133 to 169 months for his first degree burglary conviction, 151 to 191 months for his malicious maiming conviction, and  282 to 348 months for his attempted first degree rape and common law robbery convictions; defendant's sentences are to be served consecutively. Defendant was also ordered to "register as a sex offender" for life and "be enrolled in satellite-based monitoring" for life. Defendant appeals.

## II. Defendant's Interview

[1] Defendant first argues that the trial court should have suppressed evidence of his recorded interview by Detective Verzaal for several reasons. The record does not include a written motion to suppress the recorded interview prior to trial, but instead defendant's attorney raised objections during trial. The following exchange took place regarding these objections to the interview:

> MR. BROWN [defendant's attorney]: Yes, your Honor. It's my understanding the State is going to make a motion where they're going to attempt to introduce Mr. Reavis' in-custody interrogation. And I want to object to that. I would object to that on the basis that this is rebuttal evidence, based on Dr. Sloan's testimony. Dr. Sloan said he saw an interview, but he did not specify what interview.

> I believe the State is going to try to introduce a disk with the interview through Detective Verzaal, and that would be a violation of his Fifth Amendment right, self-incriminating, and I believe

also the issues of whether or not he can fully understand the nature or appreciate any waivers that he may have acknowledged, and I think that it's highly prejudicial for the jury at this point to see that if he's not going to testify, which he's decided not to do.

And the State is probably going to argue that this is going to go to the formulation of Dr. Wolfe's opinion, but this was taken 18 days after the time of the crime.

(Emphasis added.) The trial court decided to allow evidence of the interview and defendant's attorney stated, "*And I object* under the Fourth, Fifth, and Sixth Amendments that it is not relevant as to whether or not he was sane at the time of the crime, and that our doctor did not acknowledge this piece of evidence that they wish to submit." (Emphasis added.)

When the State was ready to introduce defendant's interview during Detective Verzaal's testimony, defendant objected again and requested *voir dire*, which the trial court allowed, although defendant did not actually ask the witness any questions or present any evidence relevant to his objections. Defendant's attorney stated,

I argue to you that under the totality of the circumstances, Fourth, Fifth, Sixth Amendments, that Mr. Reavis was not able to fully be informed and fully understand the nature of waiving his Miranda rights. . . .

. . . .

I'm arguing to the Court that he wasn't capable of fully under-standing, wasn't fully informed, and didn't fully—and have knowledge to waive his rights. And that's what's required for the admission of this evidence.

The trial court again overruled defendant's objection.

Defendant now argues that "the trial court erred in failing to make findings and conclusions on Mr. Reavis' motion to suppress his statement" and "in denying Mr. Reavis' motion to suppress his state-ment to police, as Reavis did not give a knowing, voluntary or intelligent waiver of his rights to silence and to counsel[.]" (Original in all caps.) However, defendant never actually made a "motion to suppress." In his brief, defendant refers to his objections as "[i]n-[t]rial [m]otion to [s]uppress [v]ideotaped [c]onfession[,]" the recorded interview, but the record does not support defendant's assertion that he made a motion to suppress.

N.C. Gen. Stat. § 15A-974 provides that "Upon timely motion, evidence must be suppressed if: (1) Its exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina[.]" N.C. Gen. Stat. § 15A-974(a)(1) (2007). The legal grounds upon which defendant sought the exclusion of the recorded interview were constitutional, so a pretrial motion to suppress was required:

> The exclusive method of challenging the admissibility of evidence upon the grounds specified in G.S. 15A-974 is a motion to suppress evidence which complies with the procedural requirements of G.S. § 15A-971 *et seq.* The burden is on the defendant to demonstrate that he has made his motion to suppress in compliance with the procedural requirements of G.S. § 15A-971 *et seq.*; failure to carry that burden waives the right to challenge evidence on constitutional grounds.

*State v. Jones*, 157 N.C. App. 110, 113, 577 S.E.2d 676, 678-79 (2003) (citations and quotation marks omitted).

N.C. Gen. Stat. § 15A-975 sets forth the requirements for a motion to suppress, which are applicable to defendant's constitutional arguments that his recorded interview was inadmissible. N.C. Gen. Stat. § 15A-975 (2007). N.C. Gen. Stat. § 15A-975 provides that

> (a) In superior court, the defendant may move to suppress evidence only prior to trial unless the defendant did not have reasonable opportunity to make the motion before trial or unless a motion to suppress is allowed during trial under subsection (b) or (c).

> (b) A motion to suppress may be made for the first time during trial when the State has failed to notify the defendant's counsel or, if he has none, the defendant, sooner than 20 working days before trial, of its intention to use the evidence . . . .

> (c) If, after a pretrial determination and denial of the motion, the judge is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion, he may permit the defendant to renew the motion before the trial or, if not possible because of the time of discovery of alleged new facts, during trial.

*Id.*

Defendant makes no argument that the State failed to disclose the evidence of his interview or statement in a timely manner, and the trial court did not make any determination of a motion to suppress prior to trial; thus N.C. Gen. Stat. § 15A-975(b) and (c), which would permit a motion to suppress to be made for the first time during trial, are not applicable. *See* N.C. Gen. Stat. § 15A-975(b)-(c). Just as in *Jones*, "Defendant failed to bring himself within any of the exceptions to the general rule. . . . Thus, defendant's objection at trial to the admissibility of the evidence is without merit because the objection, treated as a motion to suppress, was not timely made. We therefore overrule this assignment of error." *Jones* at 114, 577 S.E.2d at 679 (citation omitted).

### III. Prior Offenses

[2] Defendant next argues that the trial court erred by allowing evidence of his prior offenses. Defendant directs our attention to the testimony of Dr. Jerry Sloan who testified for defendant as an expert in the field of psychiatry. On direct examination by defense counsel, Dr. Sloan provided a thorough review of defendant's history of mental illness, which included noting defendant's time in prison in 1996 for robbery where defendant "was a difficult inmate." During cross-examination, the State presented Dr. Sloan with police reports from three incidents, all occurring on the same day, which ultimately led to defendant's conviction for the robbery for which defendant had previously been imprisoned. After summarizing the details of the police reports, the State went on to question Dr. Sloan about defendant at the time of the 1996 incidents, including his mental competency, whether defendant previously raised the issue of insanity, and defendant's incentive to malinger during his time in prison.

Defendant argues that the trial court erred in admitting evidence regarding his prior offenses into evidence because the

> evidence was not admissible; it was not proper rebuttal; the defendant expert did not rely on it in his report; the offenses were not similar and were remote in time to the instant offenses. The evidence was offered only to show propensity to commit crimes. The evidence was prejudicial, misleading and confused the issues for the jury[.]

"The standard of review for admission of evidence over objection is whether it was admissible as a matter of law, and if so, whether the trial court abused its discretion in admitting the evidence." *State v. Bodden*, 190 N.C. App. 505, 512, 661 S.E.2d 23, 27 (2008) (citation

omitted). "The trial court has wide discretion in controlling the scope of cross-examination and its rulings should not be disturbed unless prejudicial error is clearly demonstrated." *State v. Wright*, 52 N.C. App. 166, 178, 278 S.E.2d 579, 588 (1981) (citations omitted).

Defendant makes at least six arguments for why the police reports and Dr. Sloan's testimony regarding them are inadmissible, but even assuming *arguendo* that defendant properly preserved all these issues for appeal, he would still find no relief because he opened the door to this evidence. In *State v. Brown*, this Court provided a thorough analysis of when evidence that is typically not admissible becomes admissible on cross-examination or for rebuttal purposes because of the evidence presented by defendant:

> When evidence which would have been excluded under one rule of admissibility is nevertheless made admissible and competent under a different and overriding rule, the rules ought first to be examined. When a defendant has neither taken the stand and testified nor independently placed his character in evidence through other witnesses, it is recognized to be prejudicial and reversible error to allow the State to introduce evidence of any prior convictions of the defendant. In that context we do not recognize it as either impeachment evidence or as being within the scope of cross-examination of other witnesses to allow knowledge of any prior criminal record to be heard. However, North Carolina has long recognized in trial practice a doctrine known as opening the door. Some text writers and other jurisdictions call it curative admissibility. In a note commenting upon the rules of curative admissibility, the author defines our phrase: Another is the familiar doctrine of opening the door; it is said that if one party without objection first introduces certain testimony the door is opened and he cannot later complain of the other party's similar evidence. The author further comments that the reason the courts do admit rebutting evidence is because the emphasis is switched and is placed on the original party's action in offering the evidence, by which he waived future objection to that class of evidence. The theory, as gleaned from *Kelley v. Hudson*, 407 S.W. 2d 553, 556 (Mo. 1966), is that the party who opens up an improper subject is held to be estopped to object to its further development or to have waived his right to do so. The Indiana Supreme Court said it this way: If a party opens the door for the admission of incompetent evidence, he is in no plight to complain that his adversary followed through the door thus opened. In Iowa, the court gave as its rationale

for the doctrine: This was clearly a continuation of the subject introduced by the defendant, and objection cannot now be raised by the same party to the competency of the evidence. *Wigmore* . . . sums up the controlling principles for having a curative admissibility doctrine, by declaring, the emphasis is placed upon the original party's voluntary action in offering the evidence by which he virtually waived future objection to that class of facts.

*State v. Brown*, 64 N.C. App. 637, 644, 308 S.E.2d 346, 350-51 (1983) (citations, quotation marks, and brackets omitted), *aff'd*, 310 N.C. 563, 313 S.E.2d 585 (1984).

In *Brown*, the defendant questioned "[w]hether the trial court should have granted a mistrial on the grounds that testimony was allowed before the jury by defendant's probation officer of defendant's previous conviction when defendant had not taken the stand or put his character in issue[.]" *Brown* at 643, 308 S.E.2d at 350 (quotation marks omitted). This Court determined that defendant had "opened the door" to evidence of his prior offenses, noting that:

it was the defense counsel himself on direct examination of his own witness who elicited the testimony that the defendant was in fact on parole and that he had been on parole for two years. There was no motion by defense counsel to strike the answer as being unresponsive, or otherwise objectionable. Likewise, the defense counsel made no objection or motion to strike to the State's going into this same subject matter when the district attorney asked, "Is he still under parole with you," and received a "yes" answer. We hold that in this context the defense counsel opened the door to the facts surrounding the defendant's parole, and the State could properly pursue a subject voluntarily introduced by the defense and which subject then fell within the scope of cross-examination once the door had been opened. As said in *Sisler v. Shaffer*, 43 W. Va. 769, 771, 28 S.E. 721, 721 (1897), Strange cattle having wandered through a gap made by himself, he cannot complain.

. . . In the case at bar, the defense counsel purposely called [the defendant's parole officer] to establish the defendant's residence. This witness testified freely concerning the defendant's parole with no admonishment from defense counsel. Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially. . . .

. . . [T]he defense counsel, in calling [the defendant's parole officer], invited the alleged error by eliciting evidence which he might have rightfully excluded if the same evidence had been offered by the State. It is important to note that the trial judge only admitted testimony concerning the conviction for which the defendant was on parole and no other evidence pertaining to his character or criminal record was allowed. Thus, the defendant was harmed only to the extent that he himself opened the door to the subject matter of his parole. Because the defendant opened the door to this particular conviction, this invited error could not be grounds for a mistrial.

*Id.* at 645-46, 308 S.E.2d at 351-52 (citations, quotation marks, ellipses, and brackets omitted).

Here, as in *Brown*, "it was the defense counsel himself on direct examination of his own witness who elicited the testimony that the defendant [had] in fact" been previously convicted of robbery. *Id.* at 645, 308 S.E.2d at 351. Defense counsel presented evidence as to defendant's time in prison, the year of the crime, the type of crime committed, defendant's time on probation, and defendant's probation violation which subsequently put him back in prison. On cross-examination, the State questioned Dr. Sloan about defendant's time in prison, defendant's previous "pleas which ultimately sent [defendant] to prison[,]" and the exact dates and times of the incidents, one of which led to defendant's incarceration, all without any objection from defendant. Defendant raised no objection until the State presented the police reports from defendant's prior robbery conviction. However, as Dr. Sloan had testified about the robbery conviction, the State could properly inquire into his knowledge of the events which led to the conviction. Just as in *Brown*, we conclude that defendant opened the door to questions regarding his crimes in 1996. *See id.* at 644-46, 308 S.E.2d at 350-52. Therefore, the trial court did not abuse its discretion in overruling defendant's objection. Accordingly, we overrule this argument.

## IV. Burglary

As to defendant's conviction for burglary, defendant raises three issues, all dealing with the essential element of "nighttime." Defendant challenges the sufficiency of the evidence, the jury instructions, and the effectiveness of his counsel regarding this issue.

## A. Sufficiency of the Evidence

**[3]** Defendant argues that "there was insufficient evidence to convict Mr. Reavis of first-degree burglary, as [Ms. Smith] gave uncontroverted testimony that there was enough light to see a person next to her." (Original in all caps.) At trial defendant made a motion to dismiss, arguing that the evidence was not sufficient to support a finding that the offense occurred during "nighttime," which is an essential element of first degree burglary. *State v. Singletary*, 344 N.C. 95, 101, 472 S.E.2d 895, 899 (1996).

> Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a jury finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense.

> Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility. Evidence is not substantial if it is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, and the motion to dismiss should be allowed even though the suspicion so aroused by the evidence is strong. This Court reviews the denial of a motion to dismiss for insufficient evidence *de novo*.

*State v. Robledo*, 193 N.C. App. 521, 524-25, 668 S.E.2d 91, 94 (2008) (citations, quotation marks, ellipses, and brackets omitted). "[C]ontradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve[.]" *State v. Prush*, 185 N.C. App. 472, 478, 648 S.E.2d 556, 560 (2007), *disc. review denied*, 362 N.C. 369, 663 S.E.2d 855 (2008).

"The elements of first-degree burglary are: (i) the breaking (ii) and entering (iii) in the nighttime (iv) into the dwelling house or sleeping apartment (v) of another (vi) which is actually occupied at the time of the offense (vii) with the intent to commit a felony therein." *Singletary* at 101, 472 S.E.2d at 899 (citations omitted); *see* N.C. Gen. Stat. § 14-51 (2007). "North Carolina provides no statutory definition of nighttime. However, our courts adhere to the common

law definition of nighttime as that time after sunset and before sunrise when it is so dark that a man's face cannot be identified except by artificial light or moonlight." *State v. McKeithan*, 140 N.C. App. 422, 432, 537 S.E.2d 526, 533 (2000) (citation and quotation marks omitted), *disc. review denied and appeal dismissed*, 353 N.C. 392, 547 S.E.2d 35 (2001).

During defendant's trial, Ms. Smith testified as follows:

A.   That morning was not so dark that I couldn't see, you know, it was—it was—light was breaking. I could see quite well.

Q.   Didn't, in fact, you say you were greeting the morning and you could see up and down the street?

A.   Yes. And across.

Q.   And across the street?

A.   Yes.

Q.   And in fact, you even looked through your peephole, and through your peephole you could see outside?

A.   Pardon me?

Q.   You looked through your peephole before you opened your door, right?

A.   Oh, I do. I always do.

Q.   And you didn't see anybody?

A.   No one.

Q.   And you had to walk across your steps to go down to your outside porch steps, right?

A.   Yes.

Q.   To get your newspaper. And you could see up and down the street, it was bright enough to see up and down the street?

A.   Yes.

Q.   And you could see across the street?

A.   Yes.

Q.   And if someone had been on the street, you would have been able to see them?

A.   Yes.

STATE v. REAVIS

[207 N.C. App. 218 (2010)]

Q.  Would you agree that if your neighbor had been standing next to you, you would have been able to see their face?

A.  Oh, yes.

Q.  Bright enough to be able to see their face if they had been next to you?

A.  Yes, I could.

Ms. Smith's testimony tends to show Ms. Smith's home was not broken into in the nighttime. *McKeithan* at 432, 537 S.E.2d at 533.

However, there was also evidence that (1) Ms. Smith called 911 after her attack and the time of the 911 call was 5:42 a.m.; (2) Ms. Smith told police the time of her attack was between 5:00 and 5:30 a.m.; (3) the crime scene technician who arrived at the scene of the crime after the police were called testified "it was still pretty dark" when she arrived, and she used a flashlight in order to take good photographs; (4) defendant stipulated to a record from the U.S. Naval Observatory which showed that on the date of Ms. Smith's attack, the sun did not rise until 6:44 a.m., approximately an hour and fifteen minutes to an hour and forty-five minutes after other evidence established Ms. Smith was attacked; *see State v. Garrison*, 294 N.C. 270, 280, 240 S.E.2d 377, 383 (1978) (Our Supreme Court notes the time of sunset as found by the U.S. Naval Observatory to establish nighttime: "[W]e take judicial notice that in Union County on 1 March 1977 the sun set at 6:10 p.m. and that it was nighttime before 7:00 p.m. *See* the schedule for 'Sunrise and Sunset' computed by the Nautical Almanac Office, United States Navel Observatory."), this evidence tends to show that Ms. Smith's home was broken into in the nighttime. *See McKeithan* at 432, 537 S.E.2d at 533. Thus, the evidence is contradictory.

Viewing the evidence "in the light most favorable to the State and giving the State every reasonable inference therefrom," *Robledo* at 524, 668 S.E.2d at 94, there was sufficient evidence to take the case to the jury regarding defendant's charge for burglary. *See Singletary* at 101, 472 S.E.2d at 899; *Robledo* at 524, 668 S.E.2d at 94. "[C]ontradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve[.]" *Prush* at 478, 648 S.E.2d at 560. Accordingly, the trial court properly denied defendant's motion to dismiss. We overrule this argument.

B. Jury Instructions

[4] Defendant next contends that "the trial court committed plain error in failing to instruct the jury on the definition of nighttime." (Original in all caps). Defendant is correct in noting that "the trial judge must instruct the jury on the definition of nighttime, if there is doubt as to whether it was nighttime." *McKeithan* at 432, 537 S.E.2d at 533 (citation and quotation marks omitted). As we have explained above, there was some "doubt as to whether it was nighttime" given the contradictory evidence. *Id.* However, defendant concedes he did not request an instruction on the definition of nighttime, and therefore he proceeds under plain error. "Under plain error review, the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." *State v. Doe*, 190 N.C. App. 723, 732, 661 S.E.2d 272, 278 (2008) (citation and quotation marks omitted).

We are not convinced that "the jury probably would have reached a different verdict" if the trial court had instructed the jury as to the definition of nighttime. *Id.* While the jury may have relied solely on the testimony of Ms. Smith, the jury might also have discounted the testimony of a 96-year-old woman in this respect and instead relied on the time of the 911 call, the time Ms. Smith originally said she was first attacked as reported to the police, the testimony of the crime scene technician who testified "it was still pretty dark" even after she arrived on the scene, and the record from the U.S. Naval Observatory establishing that sunrise was not until an hour and fifteen minutes to an hour and forty-five minutes after Ms. Smith was first attacked. Indeed, the undisputed evidence, the time of sunrise from the U.S. Naval Observatory as stipulated by defendant, is that the incident literally occurred "after sunset and before sunrise[.]" *McKeithan* at 432, 537 S.E.2d at 533. Considering Ms. Smith's testimony that it was light enough for her to see defendant's face as the only evidence supporting a finding that it was not nighttime, as opposed to the undisputed evidence as to the time of sunrise and other substantial evidence of darkness at that time of day, we cannot now find that "the jury probably would have reached a different verdict" had they been instructed on the definition of nighttime. *Id.* Accordingly, this argument is overruled.

C. Ineffective Assistance of Counsel

[5] Lastly, defendant argues his "trial counsel was ineffective in failing to request a jury instruction on the definition of nighttime." (Original in all caps).

To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test. First, he must show that counsel's performance fell below an objective standard of reasonableness. Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error.

However, the fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings. This determination must be based on the totality of the evidence before the finder of fact.

*State v. Batchelor*, —— N.C. App. ——, ——, 690 S.E.2d 53, 57 (2010) (citations and brackets omitted).

As we have already determined, though defendant was entitled to an instruction on nighttime, he has failed to show that "but for counsel's error, there would have been a different result in the proceedings." *Id.* Defense counsel's stipulation to the time of sunrise indicates that he did not consider this issue to be seriously in dispute and the stipulation was entirely reasonable, as the trial court could have taken judicial notice of the time of sunrise, even without defendant's stipulation. *See Garrison* at 280, 240 S.E.2d at 383. Although on the evidence presented in this case, the jury could have reasonably decided either way regarding whether the crime was committed at nighttime, we consider it highly improbable that there would have been a different result if the jury had been instructed on the definition of nighttime. Accordingly, this argument is overruled.

### V. Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judges ELMORE and JACKSON concur.